## Guida, Appellant, *v.* Giller, Appellant.

Argued November 14, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

112

*Howard R. Detweiler,* for defendants.

*Peter P. Zion,* with him *Lynwood F. Blount,* for plaintiffs.

OPINION BY MR. JUSTICE EAGEN, January 2, 1962:

The wife plaintiff, Anna S. Guida, a pedestrian, was struck by an automobile at the intersection of 61st Street and Buist Avenue in the city of Philadelphia. Claiming that the injuries she suffered in the accident were caused by the careless operation of the automobile, she and her husband, Ralph Guida, instituted an action for the recovery of damages. Named as defendants were: (1) the operator of the automobile, Sidney Giller; (2) Morgan's Home Equipment Corporation; and (3) Modern Auto Leasing Corporation.[1] It was alleged in the complaint that Giller was an employee of both corporate defendants and that at the time of the accident he was acting within the scope of that employment. At trial, the court entered a compulsory nonsuit as to the defendant, Modern. The issue of the liability of the other two defendants, Giller and Morgan's Home,

---

[1] Hereinafter we shall refer to defendant No. 2 by Morgan's Home and defendant No. 3 by Modern.

was submitted to the jury. A verdict in favor of both plaintiffs, and against both defendants, was returned by the jury. The plaintiffs moved the court to remove the nonsuit as to the defendant, Modern, and to grant a new trial as to the other defendants. After argument, the court en banc refused to remove the nonsuit, but did order a new trial as to the other defendants. Giller and Morgan's Home appealed (Nos. 432, 433, 434 and 435) from the order directing a new trial. The plaintiffs appealed (Nos. 380 and 381) from the judgment entered following the refusal of the court to remove the nonsuit as to the defendant, Modern.

## Appeals No. 380 and No. 381

The defendant, Modern, filed a timely and responsive answer to the plaintiffs' complaint, specifically, denying that the operator of the automobile involved was its employee or engaged in the performance of its business, and stating that, at the time involved, the automobile was under lease to the defendant, Morgan's Home. The other two defendants filed no answer to the complaint.

At trial, the plaintiffs introduced into the record, without objection, the pleadings for the purpose of admitting ownership of the automobile by Modern. The plaintiffs then called as for cross-examination, the defendant-operator, Giller. In response to plaintiffs' counsel's questions, he testified that the automobile, a pleasure car, with pleasure car license plates, was registered in the name of Modern and, at the time involved, it was being used for a business purpose. Then in answer to defendants' counsel's questions in the form of "Redirect Examination," he testified that, at the pertinent time, he was an employee of the defendant, Morgan's Home, and further that the automobile was being used then on the sole business of that defendant. On this important question, no further testimony followed.

With the record in this posture, the trial court correctly granted a compulsory nonsuit as to Modern.

Plaintiffs' own uncontradicted evidence showed that the subject automobile was a noncommercial vehicle and that it was not being operated in the furtherance of the business of Modern. They were bound by this testimony. When one calls a party adversely interested as for cross-examination, the testimony thus obtained is conclusive unless rebutted by other testimony: *Rogan Estate*, 404 Pa. 205, 171 A. 2d 177 (1961). The plaintiffs argue that on the testimony presented they were entitled to the presumption that the automobile was being used for the business purposes of its owner, and that this presumption, in itself, was sufficient to render the question one for the jury's determination. This position is wholly untenable.

In *Marach v. Kooistra*, 329 Pa. 324, 326, 198 Atl. 66 (1938), we said: "Where the vehicle involved is a commercial vehicle, as distinguished from a noncommercial vehicle, *in the absence of other evidence,*[2] it will be presumed that it was being operated at the time on its owner's business." *Assuming* for the purpose of this case that such a presumption arises under the facts presented, this presumption is only factual in nature, and when evidence to the contrary is presented by the party seeking the benefit of the presumption, it vanishes into thin air. The case of *Felski v. Zeidman*, 281 Pa. 419, 421, 126 Atl. 794 (1924), is squarely on point and is controlling. Therein, the Court said: "True, it was a business truck with defendant's name thereon, which would raise a presumption that it was being used in his business (citing cases) ; but in the instant case this presumption cannot stand in the face of the evidence of plaintiff's witnesses to the contrary. Had the defendant offered oral testimony to rebut the presumption, its credibility would have been for the jury (cit-

---

[2] Emphasis supplied.

ing cases), but plaintiff cannot question the credibility of his own uncontradicted witnesses. Moreover, he was bound by the testimony of the defendant, given as under cross-examination, for it was neither contradicted nor qualified (citing cases) . . . ."

In Appeals Nos. 380 and 381, the judgment is affirmed.

## Appeals No. 432, No. 433, No. 434, No. 435

The sole question advanced for our determination in these appeals is: Did the lower court abuse its discretion in granting a new trial as to the defendants, Giller and Morgan's Home? Unless a palpable abuse of discretion clearly appears, we will not interfere with the lower court's order: *Jess v. McMurray,* 394 Pa. 526, 147 A. 2d 420 (1959); *Segriff v. Johnston,* 402 Pa. 109, 166 A. 2d 496 (1960).

The action was strenuously defended on both the question of liability and the extent and nature of the injuries suffered. In evaluation of the right to a new trial, we must consider all of the testimony: *Bohner v. Eastern Express, Inc.,* 405 Pa. 463, 175 A. 2d 864 (1961).

The jury awarded the wife-plaintiff damages totaling $5000 and the husband-plaintiff, $2500.[3]

In the motion for a new trial in the court below, the plaintiffs argued that the awards were grossly inadequate and also cited numerous other assignments of error dealing with the conduct of the trial. The court en banc expressed the opinion that, while none of the trial court's rulings complained of "constituted reversible

---

[3] These particular appeals were orginally filed in the Superior Court. Because of the appeals pending in this Court in Nos. 380 and 381, the Superior Court certified Nos. 432, 433, 434, 435 to the Supreme Court for disposition under the authority of the Act of June 11, 1935, P.L. 301, §2, 12 PS §1107b.

error in itself, taken collectively these rulings justified the granting of a new trial. The question was one for the court's discretion."

In determining the validity of the grant of a new trial, we are not limited on review to a consideration of the reason given therefor by the court below. If any sound reason whatsoever appears in the record, the grant of the new trial will be sustained: *Sherwood v. Elgart*, 383 Pa. 110, 117 A. 2d 899 (1955). We are convinced that such reason exists.

The wife-plaintiff testified that following the accident she was unable to pursue her regular employment due to the injuries suffered. A physician, Dr. Thomas, specializing in general surgery and traumatic orthopedics, testified that x-rays confirmed a diagnosis of a fracture of the transverse process of the fifth lumbar vertebra and a fracture of the sacral alae on the left. He said the plaintiff suffered constant pain on the left side in the lumbar region and in the pelvic area of the body. Several months after the accident, while the plaintiff was still in his care, she complained, inter alia, of urination problems, and an examination was made to determine if any damage to the bladder existed. The court refused permission to pursue this line of questioning because this item of injury was first specifically pleaded in an amended complaint filed after the statute of limitation had run. Upon the state of the record, this appears to be error, and prejudicial. If the doctor had made the required examination and therefrom was able to express a definite opinion, based on medical knowledge, that such an injury existed due to the accident, his testimony was competent and relevant on this point. The breach of duty and not the consequential damages is the cause of action with which the statute of limitations is concerned: *Bernath v. Le-Fever*, 325 Pa. 43, 189 Atl. 342 (1937). Again, after Dr. Thomas expressed the opinion that the injuries to

the wife-plaintiff were permanent in nature, the trial judge interposed and said: "Strike out the answer. They are not permanent." Our reading of the doctor's testimony as a whole convinces us that the witness was competent to express this opinion and that the court, in making the statement referred to, was in error and usurped the functions of the jury. The trial judge evidently reconsidered his position for, in his charge to the jury, he submitted the question of permanent injury.

In view of the above, without discussing the correctness of other rulings now questioned, we cannot now say that the court en banc abused its discretion in awarding the new trial. If the injuries were as extensive as plaintiffs' testimony discloses, the verdicts were extremely modest. This may well have been due to the errors in the trial discussed above. On the other hand, as appellee argues, the amount of the verdict may have been a compromise due to the nature and strength of the defense. On this, it is not now for us to conjecture.

Order in Appeals Nos. 432, 433, 434 and 435 is affirmed.