625 A.2d 1181

**Walter L. COKER, Appellant,**

v.

**S.M. FLICKINGER COMPANY, INC., Appellee.**

Supreme Court of Pennsylvania.

Argued March 9, 1992.

Decided June 2, 1993.

442

 443

Wendell G. Freeland, Freeland & Kronz, Pittsburgh, for appellant.

Natalie Dwyer Haller, Paul F. Burroughs, Erie, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

Today we clarify the standard by which an appellate court must review a trial court's decision to order a new trial. The last occasion we discussed this subject was in *Westinghouse Elevator Co. v. Herron*, 514 Pa. 252, 523 A.2d 723 (1987). However, that case appears to have created some confusion in the Superior Court in this case. Our decision to grant alloca-

tur was principally driven by our desire to rectify this situation.

Walter L. Coker, Appellant herein, sued the S.M. Flickinger Company for injuries he suffered when one of Flickinger's trucks collided with his automobile. Flickinger admitted liability; therefore the trial was limited to the issue of damages. Prior to trial, Flickinger filed a motion to exclude evidence relating to the circumstances surrounding the collision. The trial court granted that motion over Coker's objection and issued an order specifying that:

> plaintiff shall not be permitted to introduce during trial, nor refer to either directly or indirectly, any evidence regarding the defendant's conduct at the time of the collision, the manner in which the defendant's vehicle was being operated, or the manner in which the collision occurred....

*Coker v. S.M. Flickinger Co.*, No. 3110–A--1984 (Erie County, C.P. Feb. 9, 1988) (Order granting motion in limine).

Coker claimed that as a result of the accident, he sustained back and other injuries which produced pain and limited his mobility. In order to prove the existence and severity of these injuries, he offered his own testimony and the testimony of other individuals, including his treating physician. He personally testified how his body reacted to the collision. In addition, both he and his wife testified regarding his back injury. Flickinger attacked the credibility of Coker's testimony by introducing an expert who testified that Coker could not have suffered the injuries he claimed. Flickinger also introduced a video tape showing Coker performing physical activities which he denied being able to do.

Coker sought to respond to the attack on his credibility by introducing evidence relating to the accident. He argues that the court erred in precluding him from introducing a written "accident notice" and other evidence. It is asserted that this evidence would have established the force and impact of the collision. However, because of the trial court's evidentiary ruling, he was not permitted to offer this evidence.

The verdict of the jury as to damages was in favor of Appellee Flickinger. In response, Coker sought a new trial. The Erie County Court of Common Pleas sitting *en banc* granted a new trial limited to the issue of damages. Flickinger appealed the new trial order to the Superior Court where a divided panel of judges reversed the lower court order and reinstated the jury's verdict. The majority concluded that the basis for the order was "legally inadequate." *Coker v. S.M. Flickinger Co.*, No. 1263 Pittsburgh 1988, slip op. at 4 (Sept. 5, 1989) [395 Pa.Super. 648, 570 A.2d 585 (table) ]. By contrast, the dissent stated it would have affirmed the order since its review of the record disclosed that the trial court "did not abuse its discretion" in granting a new trial. *Id.*, dissenting slip op. at 3 (Sept. 5, 1989). This appeal followed. 525 Pa. 640, 581 A.2d 567 (1990).

The members of both the majority and the dissent of the Superior Court analyzed this case according to the instructions we articulated in *Westinghouse Elevator Co. v. Herron*, 514 Pa. 252, 523 A.2d 723 (1987). Since those instructions appear to have created some confusion, we begin by reviewing them. *Westinghouse* summarized the standard of review in the following way:

> The standard for review of a trial court's grant of a motion for a new trial generally is whether the trial court palpably and clearly abused its discretion or committed an error of law which controlled the outcome of the case. When the trial court gives a single reason for the grant of a new trial, however, its discretion is not at issue, but instead, the validity of its legal justification for a new trial, and in that case, an appellate court must review for the legal adequacy of the reason given for the new trial:
>
> > When it clearly appears from the opinion of the court below in the new trial motion, "that except for the reason relied upon by the court for granting a new trial, judgement would have been entered on the verdict, the action of the lower court becomes reviewable, not for an abuse of discretion, but for the legal merit of the sole and exclusive

reason assigned for the granting of a new trial: ....":
*Keefer v. Byers,* 398 Pa. 447, 449, 159 A.2d 477....
*Id.* at 256, 523 A.2d at 725 (citations and footnote omitted)
(quoting *Penneys v. Segal,* 410 Pa. 308, 311, 189 A.2d 185, 187
(1963)). The Superior Court construed this passage to mean
that cases receive different treatment depending on the num-
ber of reasons offered by the trial court as the basis for its
decision. However, the Superior Court misunderstood both
the distinction that was being drawn and the difference in
treatment that was being described.[1]

■ When reviewing new trial orders, we distinguish cases
based on whether the trial court leaves open the possibility
that it would have ordered a new trial for reasons other than
those it specified. We acknowledged this in *Westinghouse*
when we quoted *Penneys* and *Keefer.* Those two cases ex-
pressly indicated that we differentiate cases based on whether
" 'except for the reason relied on by the court for granting a
new trial, judgment would have been entered on the verdict.' "
*Penneys,* 410 Pa. at 311, 189 A.2d at 187 (quoting *Keefer,* 398
Pa. at 449, 159 A.2d at 478). Thus, the issue is not simply
whether the trial court cites one or multiple reasons. Rather,
the issue is whether it indicates that but for any reason cited,
it would not have ordered a new trial.

■ The quote from *Penneys* and *Keefer* only made
reference to a single reason because the trial court specifically
offered one reason: the inadequacy of the jury instructions.
However, it has been clear ever since this Court first synthe-
sized the rules pertaining to appellate review of new trial
orders that it makes no difference whether the trial court cites
one or more than one reason, as long as it is apparent from its
opinion that it would not have ordered a new trial were it not
for its stated *reasons. Class & Nachod Brewing Co. v.*

1. Part of the Superior Court's difficulties can be attributed to the way in
which *Westinghouse* characterized the rules of appellate review. As the
following discussion will illustrate, the terms that were used fail to
accurately and completely identify crucial considerations that should
guide an appellate court's review. To that extent, *Westinghouse* should
be disregarded.

*Giacobello,* 277 Pa. 530, 537, 121 A. 333, 336 (1923). *Accord Mozino v. Canuso,* 384 Pa. 220, 224, 120 A.2d 300, 302 (1956); *Culver v. Lehigh Valley Transit Co.,* 322 Pa. 503, 511, 186 A. 70, 74 (1936); *Marko v. Mendelowski,* 313 Pa. 46, 47, 169 A. 99, 99 (1933). As a practical matter, a trial court's reference to a finite set of reasons is generally treated as conclusive proof that it would not have ordered a new trial on any other basis.

The quote in *Westinghouse* from *Penneys* and *Keefer* indicates that the distinction it referred to is important because it dictates whether the new trial order is reviewable for an abuse of discretion or for the "merit" of the reason assigned for granting a new trial. The Superior Court treated the latter inquiry as being more penetrating than the former. However, that is not the case. This is apparent from an examination of the confines within which a trial court may order a new trial.

■ It is a fundamental and longstanding precept that the decision to order a new trial is one that lies within the discretion of the trial court. *E.g. Spang & Co. v. United States Steel Corp.,* 519 Pa. 14, 24, 545 A.2d 861, 865 (1988); *Colosimo v. Pennsylvania Electric Co.,* 513 Pa. 155, 163, 518 A.2d 1206, 1210 (1986); *Smyth v. Philadelphia & West Chester Traction Co.,* 263 Pa. 511, 516, 107 A. 20, 21 (1919). This means that the trial court has considerable latitude within which to act, but there are also very specific limits to what it can do.

The term "discretion" imports the exercise of judgement, wisdom and skill so as to reach a dispassionate conclusion, and discretionary power can only exist within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgement, but where the judgement is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

P.L.E. New Trial § 2. One way of summing up all the qualities described in this definition of a valid exercise of discretionary power is to say that the decision had merit. Conversely, if the reason for performing a discretionary act had no merit, then the trial court abused its discretion. Thus, when viewed in terms of the degree of scrutiny that should be applied, an inquiry into an abuse of discretion is operationally equivalent as one into the merit of the trial court's decision.

While the two inquiries referred to in the quote from *Penneys* and *Keefer* demand the same degree of scrutiny, they differ in terms of the scope of review. Like many of our cases, *Penneys* and *Keefer* use the term "abuse of discretion" to connote a relatively broad scope of review. Under this procedure, if the trial court leaves open the possibility that it would have ordered a new trial for reasons other than those specifically mentioned, then an appellate court must affirm the decision if any reason appears in the record for doing so. In other words, the reasons cited need not be sufficient to justify a new trial as long as the record discloses that another reason, which is sufficient, exists. Such was the case in *Guida v. Giller*, 406 Pa. 111, 176 A.2d 903 (1962). On that occasion the trial court granted the plaintiff's motion for a new trial on the basis that it made a number of harmless errors which, taken collectively, justified a new trial. *Id.* at 115–16, 176 A.2d at 905. While we affirmed the new trial order, we did not rely on the trial court's rationale for doing so. Instead, we independently identified one specific erroneous ruling that was sufficient to justify the decision. The record showed that the trial court improperly excluded the plaintiff's attending physician's testimony regarding the cause of the plaintiff's injuries. We concluded that this erroneous ruling, without more, warranted new proceedings. *Id.* at 117, 176 A.2d at 906.

This broad scope of review is always applied if the trial court orders a new trial in the name of "justice." We do this because to say that justice requires a new trial falls short of providing any reason at all, making it necessary for an appellate court to examine the entire record to determine whether any valid reason exists for disturbing the jury's verdict. *Beal*

*v. Reading Co.*, 370 Pa. 45, 49, 87 A.2d 214, 216 (1952). If we determine that no such reason exists, we will reverse the order. Hence, in *Beal,* where the trial court said that the "interests of justice" required a new trial, we reversed its decision because the record revealed that "no facts [were] in dispute, and no issue of credibility or weight of testimony exist[ed] which require[d] the submission of [the] case to another jury." *Id. See also Gilligan v. Shaw,* 441 Pa. 305, 272 A.2d 462 (1971) (reversing new trial order where there was ample evidence which, if believed, justified the jury's verdict); *Carroll v. Pittsburgh,* 368 Pa. 436, 84 A.2d 505 (1951) (reversing new trial order where evidence was conflicting). However, if a valid reason does exist, we will affirm the new trial order. That is what happened in *Kralik v. Cromwell,* 435 Pa. 613, 258 A.2d 654 (1969). As in *Beal,* the trial court granted a new trial because the "interests of justice" required it. *Id.* at 615, 258 A.2d at 655. Upon examination of the entire record, we discovered that the trial court incorrectly instructed the jury on the burden of proof. For that reason, we upheld the trial court's decision.

A relatively narrow scope of review applies when the trial court indicates that the reasons it gives are the only basis for which it ordered a new trial. In that situation, an appellate court can only examine the stated reasons. This is what is connoted in *Keefer, Penneys* and elsewhere when the inquiry is directed at the "merit" of the reasons offered. For example, in *Adams v. Scheib,* 408 Pa. 452, 184 A.2d 700 (1962), the trial court granted a new trial solely because the verdict was against the charge of the court. We examined this reason for its merit and found that it was without basis because the trial court improperly instructed the jury and because the party that received benefit of the error did not prevail. *Id.* at 463, 184 A.2d at 706. *See also Bell v. Yellow Cab Co.,* 399 Pa. 332, 160 A.2d 437 (1960) (reviewing merit of claim that excessiveness of verdict required a new trial).

*Penneys* and *Keefer* specifically inquired into the "legal merit" of the trial court's reason because the reason cited involved an error of law. However, the examination we

performed is not different from that performed when a reason relating to an error of law is reviewed simply for its "merit." This becomes apparent by comparing *Penneys* and *Keefer* with *Childs v. Austin Supply Co.*, 408 Pa. 403, 184 A.2d 250 (1962). In all three cases the trial court said it granted a new trial because it improperly instructed the jury. However, unlike *Penneys* and *Keefer*, in *Childs* we referred to the inquiry we conducted as one into the "merit" of this reason. Nevertheless, the procedure we employed in *Childs* was identical to the one employed in the other two cases. We consulted the pertinent laws to determine whether an error was committed and, if so, whether it was so serious that a new trial was required. Thus, in *Childs*, where the plaintiff sued the defendant for selling defective merchandise, we reversed the new trial order after consulting our statutes and concluding that the court "adequately and properly instructed the jury" on the law of breach of an implied warranty in the sale of goods. *Id.* at 407, 184 A.2d at 252. In *Penneys*, we consulted our case law and determined that the failure to adequately instruct the jury on the burden of proof and the shifting of burdens was, under the circumstances, "so fundamental and basic that a new trial was required." 410 Pa. at 315, 189 A.2d at 188 (citing *Arco Metalscraft Co. v. Shaw*, 364 Pa. 39, 70 A.2d 850 (1950)). Likewise, in *Keefer* we consulted our case law and determined that the failure to instruct the jury on the restricted evidentiary use of consonant-statement testimony was "not ... basic and fundamental" under the circumstances such that a new trial was required. 398 Pa. 447, 450, 159 A.2d 477, 47 (citing *Risbon v. Cottom*, 387 Pa. 155, 163–64, 127 A.2d 101, 105 (1956)).

Thus, when *Westinghouse* indicates that there is a difference between an abuse of discretion inquiry and one into the merit of the trial court's reason, it is referring to two procedures that differ only in terms of the confines within which an appellate court must conduct its examination. In the former, the entire record may be examined, while in the latter, the inquiry is confined to an examination of the reasons offered by the trial court. The degree of scrutiny does not vary when an appellate court reviews an order granting a new trial.

The scope of review varies in the way described above in order to enable an appellate court to perform its functions without improperly interfering with the trial court's discretionary power to order a new trial. Rooted in common law principles, that power belongs to any court of record of general jurisdiction, such as a Court of Common Pleas, and it is derived from the court's "superintending authority over the verdict" in cases tried before a jury. *Graham v. Graham*, 1 Serg. & Rawle 329, 330 (1815) (Tilghman, C.J.). The reason the court has this power is to enable it to rectify situations in which the jury's verdict is against the weight of the evidence. *See id.* However, it is also exercised in other situations, such as when the court itself committed an error that prejudiced a party.

 Formerly, the rules of appellate review acknowledged this common law authority by treating new trial orders as generally being beyond the reach of appellate review except in a specified set of situations. *See Class & Nachod Brewing Co. v. Giacobello*, 277 Pa. 530, 538, 121 A. 333, 336 (1923) (synthesizing rules of appellate review of new trial orders). To an extent, this reflected a presumption that the trial court was justified in granting a new trial. *Bailey v. C. Lewis Lavine, Inc.*, 302 Pa. 273, 277, 153 A. 422, 423 (1931). However, this Court eventually declared that all new trial orders are subject to appellate review.

> While this Court usually supports the action of the trial court in granting or refusing a new trial we do not entirely abdicate our reviewing functions in such cases. This Court, too, has the duty to determine from the record whether or not the jury's verdict was so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative so that right may be given another opportunity to prevail.

*Jones v. Williams*, 358 Pa. 559, 564, 58 A.2d 57, 60 (1948).

 Although our rules may have evolved over the years, they continue to acknowledge the trial court's superintending authority over jury verdicts by specifying the manner in which

a new trial order should be examined. In this regard, the overriding concern is that an appellate court refrain from ordering a retrial where the trial court would not have done so. Thus, if the trial court specifies the reasons for which it ordered a new trial, then an appellate court can only affirm the decision if at least one of the reasons specified is an adequate one. This is the only way an appellate court can perform its reviewing functions in such a case without invading an area of decision making that is properly committed to the trial court. However, the risk of improperly interfering with the trial court's discretionary power is not present when the trial court leaves open the possibility that it would have ordered a new trial for reasons other than those specified. Therefore, under those circumstances, an appellate court should affirm the trial court's decision as long as any valid reason for doing so appears in the record.

Even when an appellate court must confine its examination to the merit of any reasons offered by the trial court, circumstances may still demand a review of the entire record. However, the purpose for doing so is not to locate a valid reason for affirming the order. The inquiry is strictly directed at determining whether the trial court's stated reasons and factual basis can be supported. This procedure is specifically observed when a new trial is ordered because the verdict was against the weight of the evidence. *E.g., Thompson v. City of Philadelphia*, 507 Pa. 592, 599, 493 A.2d 669, 672–73 (1985). It is also the procedure to follow when the trial court says that the verdict was either excessive or inadequate. *See Ischo v. Bailey*, 403 Pa. 281, 290, 169 A.2d 38, 42 (1961) (summarizing cases).

■ When considering whether the record supports the trial court's decision, we generally defer to the trial court's judgment because, by virtue of its position, it is uniquely qualified to determine factual matters.

An appellate court by its nature stands on a different plane than a trial court. Whereas a trial court's decision to grant or deny a new trial is aided by an on-the-scene evaluation of the evidence, an appellate court's review rests solely upon a

cold record. Because of this disparity in vantage points an appellate court is not empowered to merely substitute its opinion concerning the weight of the evidence for that of the trial judge.

*Thompson v. City of Philadelphia,* 507 Pa. 592, 599, 493 A.2d 669, 672–73 (1985). Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion. *Id.* at 599–600, 493 A.2d at 673. However, if the record discloses that evidence was merely conflicting, then the new trial order would have to be reversed. *Burrell v. Philadelphia Electric Co.,* 438 Pa. 286, 265 A.2d 516 (1970). This is because in that situation, the trial court invaded the province of the jury. *Carroll v. Pittsburgh,* 368 Pa. 436, 445–448 (1951).

*Westinghouse* was a case in which we reviewed the entire record in order to determine whether the trial court's reasons and factual basis could be supported. Westinghouse was one of several defendants sued by a woman who was injured while riding an elevator it manufactured. The jury rendered a verdict in favor of the plaintiff, and the court granted the defendants' motion for a new trial on the grounds that Westinghouse had been denied an opportunity to effectively present its case to the jury. To support this contention, the trial court identified several factors it took into account, all of which related to the fact that Westinghouse's lead counsel had to be replaced during the trial by someone else who was ill-prepared to provide adequate representation in what had become a complex, multi-party case. We reviewed the record and determined that it supported the court's factual findings, which in turn supported the court's determination that Westinghouse was prejudiced. 514 Pa. at 260–61, 523 A.2d at 727–28. We must conduct that very same inquiry today.

In this instance, the trial court specified that it granted a new trial because its order excluding certain evidence was too broad. According to the trial court, sitting *en banc:*

While it is correct that Coker was able to describe what happened to his body at the time of impact and the nature of the injuries that followed, Coker was precluded by the

Court's rulings from presenting to the jury any testimony or evidence describing the impact of the vehicles or the force of the collision and thereby precluded from submitting to the jury evidence which the fact finder could have used to determine Coker's credibility as to those injuries and their extent. In essence, the jury conducted its deliberations knowing nothing about the accident except that it occurred.

In view of the defense testimony and evidence effectively challenging Coker's credibility regarding the extent of his injuries and their duration, the jury could well have concluded that the contact between the vehicles was a mere tap of their bumpers rather than the violent collision that actually occurred. We are of the opinion that the pre-trial order precluding Coker from introducing evidence of the 'manner in which the collision occurred' effectively estopped Coker from introducing evidence fundamental to the proof of his case.

*Cocker v. S.M. Flickinger Co.,* No. 3110–A–1984, slip op. at 3–4 (Erie County C.P. Sept. 9, 1988).

 The trial court's explanation clearly indicates that the new trial was ordered because it erroneously excluded admissible evidence. We have previously reviewed new trial orders that were granted on this basis. Those cases disclose that we will affirm the order if two conditions are met. First, the complaining party must voice a timely objection. *Wilson v. Pennsylvania R.R.,* 421 Pa. 419, 433, 219 A.2d 666, 674 (1966). Second, the ruling must have been prejudicial to the complaining party. *See Guida v. Giller,* 406 Pa. 111, 176 A.2d 903 (1962) (affirming new trial order where exclusion of attending physician's testimony relating to the cause of the plaintiff's injuries was prejudicial to the plaintiff). Both conditions are met here.

 Flickinger does not dispute the fact that Coker voiced a timely objection when he filed a brief in opposition to Flickinger's motion to exclude evidence relating to the circumstances surrounding the collision. Furthermore, it is clear that the court's decision to grant that motion was prejudicial to Coker. Since the error at issue is not *per se* prejudicial, we

must review the record to determine whether there is a factual basis to support the trial court's conclusion that Coker was denied the opportunity to prove his case, which is equivalent to saying that he was prejudiced. We are convinced that there is.

Our review of the record confirms the trial court's observations that Coker had to rely on his own testimony to establish the pain he was suffering, that Flickinger attacked the credibility of this testimony, and that Coker was unable to respond to this attack by offering evidence relating to the force and impact of the collision. These facts in turn support the trial court's conclusion that its evidentiary ruling prevented Coker from introducing evidence that was fundamental to the proof of his case. Having prejudiced Coker in this way, the trial court did not abuse its discretion when it ordered a new trial.

Accordingly, the Order of the Superior Court, 395 Pa.Super. 648, 570 A.2d 585, is reversed and the Order of the Erie County Court of Common Pleas is reinstated.

McDERMOTT, J., did not participate in the decision of this case.

ZAPPALA and PAPADAKOS, JJ., concur in the result.