J-S27037-20, J-S27038-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :              PENNSYLVANIA
                                :
            v.                  :
                                :
                                :
                                :
JULMEEN MORGAN                  :
                                :
            Appellant           :    No. 1982 EDA 2018

Appeal from the Judgment of Sentence Entered October 20, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000120-2016


COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :              PENNSYLVANIA
                                :
            v.                  :
                                :
                                :
                                :
JULMEEN MORGAN                  :
                                :
            Appellant           :    No. 1983 EDA 2018

Appeal from the Judgment of Sentence Entered October 20, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000121-2016


BEFORE:   SHOGAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                 **FILED JULY 7, 2020**

Appellant Julmeen Morgan appeals the judgments of sentence entered

by the Court of Common Pleas of Philadelphia County after a jury convicted

Appellant on two separate dockets of two counts of first-degree murder,

possessing an instrument of crime (PIC), firearms not to be carried without a

_____

[*] Former Justice specially assigned to the Superior Court.

license, and carrying firearms on public streets. Appellant challenges the sufficiency and weight of the evidence supporting his convictions. We affirm.

On October 9, 2015, Appellant was arrested in connection with the shooting deaths of Shaheed Henderson and Erick Ramirez. The Philadelphia County District Attorney's Office filed bills of information at CP-51-CR-0000120-2016 and CP-51-CR-0000121-2016, charging Appellant with criminal homicide of each victim on separate dockets. Appellant was also charged with the aforementioned weapons offenses at docket CP-51-CR-0000120-2016. The trial court aptly summarized the factual background of this case as follows:

> On October 6, 2015, Philadelphia Police Officers responded to the 2700 block of N. 8th Street in Philadelphia. There, they found Shaheed Henderson (hereinafter referred to as Shaheed)[1] slumped over in the driver's seat of a gold Lexus sedan suffering from a gunshot wound to the head. Victim Erick Ramirez was found lying on the sidewalk next to the open passenger side door of the vehicle. Ramirez was transported by police to Temple University Hospital where he was pronounced dead. Shaheed was pronounced dead at the scene. A subsequent autopsy revealed Shaheed's cause of death to be two gunshot wounds to the head as well as a gunshot wound to the left hip. Ramirez's cause of death was a single gunshot wound to the head. Five .380 auto fired cartridge cases (FCC's) were recovered by police from the scene. A forensic analysis of these FCC's revealed that they had all been fired from the same .380 caliber handgun. A similar analysis of the bullet specimens recovered from Shaheed's body[,] bullet jacket and the bullet jacket fragment recovered from Ramirez's body determined that each of those pieces of ballistic evidence had been fired from the same .380 caliber firearm.

---

[1] The trial court indicated that it referenced Shaheed Henderson by his first name because three witnesses with the surname Henderson testified at trial.

The evidence adduced at trial revealed the chain of events that led to [the] murders had its genesis in an incident a week before the killings in which Appellant knocked on the door of Shaheed's residence and was greeted by Shaheed's mother, Emma Henderson. Appellant indicated to Ms. Henderson that Shaheed owed him $5.00 for using his cell phone or possessing his cell phone. Ms. Henderson then gave Appellant $5.00 on her son's behalf. However, when she informed her son of the incident, Shaheed stated that he did not owe Appellant $5.00. Shaheed subsequently indicated to his sister, Naeemah Henderson, that he felt the taking of $5.00 from his mother was disrespectful.

Two days before the shooting, Shaheed was seated in his vehicle outside the Henderson residence following a family function. Upon seeing Appellant walking up 8th Street with his girlfriend, Shaheed exited the vehicle and approached Appellant. After an exchange of words, Shaheed punched Appellant in the face knocking him to the ground. He then continued striking Appellant until the two were separated. During the altercation, Appellant's girlfriend was struck in the head and sustained a wound requiring six stitches.

Between 6:00 p.m. and 7:00 p.m., on October 5, 2015, Shaheed's brother, Kareem Henderson (Kareem), and Erick Ramirez were sitting on the steps of the Henderson residence when Appellant rode by on his bike with his right hand in the pocket of his hoodie. Appellant made a U-turn and then stopped in the middle [of] the street in front of the two men and while still holding his right hand in his pocket, asked for Shaheed. When Kareem told Appellant [that] Shaheed wasn't there, Appellant responded that he saw Shaheed's car and that "[Shaheed] was going to pay for what he did." He then rode off on the bike.

At approximately 1:00 a.m. on October 6, 2015, Shaheed left the Henderson residence to meet with Ramirez. The two then met with an associate, Lionel Brown, and proceeded to Brown's residence in Shaheed's Lexus to get wrapping papers to smoke marijuana. While en route, Shaheed began discussing a problem [he had] with Appellant. As the three men drove to Brown's house, they passed Appellant near the intersection of Cambria and Franklin Streets. At that time, Brown observed that Appellant was wearing a black hoodie and tan pants.

Upon their arrival at Brown's residence, Brown exited the vehicle. As he entered his residence, he observed Appellant

- 3 -

approaching Shaheed's vehicle. Shaheed then drove off and Appellant watched Shaheed's vehicle as it drove away. Shaheed and Ramirez picked Brown up again a short time later and they proceeded to 8th Street and parked across the street from Shaheed's house. A few minutes later as the men were sitting in the vehicle, shots rang out from outside the driver's side. Brown then exited the vehicle. As he did so, he observed Appellant, who was still wearing a black hoodie and tan pants, on the driver's side shooting. Brown then fled through a nearby parking lot. Later in the morning of October 6, 2015, Brown approached detectives, indicated he had been present at the shooting and identified Appellant as the shooter. He was then brought to the homicide unit where he gave a signed statement identifying Appellant as the shooter.

The shooting was also observed by eyewitness Mario Aguirre Ruiz. Ruiz was in the front bedroom of his residence on 8th Street when he heard gunshots. He looked out the window and observed the shooter standing at the post between the driver's side front and rear of Shaheed's vehicle. While the shooter was still on the driver's side, Ruiz observed a person flee from the vehicle. The shooter then proceeded to the passenger side, grabbed the front passenger by the hair as he exited the vehicle and shot him in the head. When the shooter's hoodie came down, Ruiz was able to catch a glimpse of the shooter's face. The shooter then fled toward Somerset St. As he did so, he placed the firearm inside the waistband of his pants. Ruiz was subsequently interviewed on October 7, 2019 by homicide relating his observations [sic] and was shown a sequential photo array. When shown Appellant's photo, Ruiz indicated, "it's a possibility the male's face looks longer."

In the early morning hours of October 6, 2015, Appellant arrived at the home of his girlfriend, Daysha Gregory. Appellant told Gregory he needed her to tell the police he had been with her all night because he, "got into some shit."

A subsequent forensic analysis of video recovered from the crime scene showed an individual in a dark hoodie and tan pants fleeing from the scene. No handgun could be seen in the video as the individual fled.

[Appellant] was not licensed to carry a firearm at the time of the killings.

Trial Court Opinion ("T.C.O."), 6/21/19, at 2-6 (footnote and internal citations omitted).

At the conclusion of Appellant's trial on October 20, 2017, the jury convicted Appellant of the first-degree murder of Shaheed Henderson as well as PIC, firearms not to be carried without a license, and carrying firearms on public streets at docket CP-51-CR-0000120-2016. The jury also convicted Appellant of the first-degree murder of Erick Ramirez at docket CP-51-CR-0000121-2016.

Immediately after the jury verdict was entered, the trial court sentenced Appellant on his convictions on both dockets. The trial court entered separate sentencing orders in which it imposed consecutive life sentences for each count of murder. In addition, the trial court imposed sentences of 2½ to 5 years' imprisonment on the PIC charge, 2½ to 5 years' imprisonment on the carrying firearms on public streets charge, and 3½ to 7 years' imprisonment on the carrying a firearm without a license charge. The weapons charges were set to run concurrently with each other and the murder charges.

Appellant filed timely post-sentence motions that were denied by operation of law on February 22, 2018. On March 29, 2018, Appellant filed a request that his appellate rights be reinstated *nunc pro tunc*, alleging that he had not been notified that the post-sentence motions had been denied. On June 14, 2018, the lower court filed an order reinstating Appellant's appellate

rights *nunc pro tunc* at both docket numbers. Appellant then filed separate notices of appeal at each docket number.[2]

Appellant raises the following question for our review in his appellate brief, which is identical at both docket numbers: [w]hether the verdict against the weight and sufficiency of the evidence when the jury convicted [A]ppellant of first-degree murder and weapon offenses based on eyewitness testimony that was both weak and flawed." Appellant's Briefs, at 5.

Our standard of review is as follows:

> "A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 560 Pa. 308, 744 A.2d 745, 751 (2000). We review a sufficiency challenge *de novo*, but our scope of review is limited to the evidence of record. ***Commonwealth v. Robinson***, 128 A.3d 261, 264 (Pa. Super. 2015) (*en banc*).
>
> The Commonwealth must establish each element of the crimes charged beyond a reasonable doubt, but in so doing, it may rely on wholly circumstantial evidence. ***Commonwealth v. Galvin***, 603 Pa. 625, 985 A.2d 783, 789 (Pa. 2009). The fact-finder, "while passing on the credibility of the witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence." ***Id.*** "[A] reviewing court views all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth." ***Id.***

***Commonwealth v. Gomez***, 224 A.3d 1095, 1099 (Pa.Super. 2019).

---

[2] Appellant complied with the directive set forth in ***Commonwealth v. Walker***, ___Pa.___, 185 A.3d 969 (2018), in which our Supreme Court reasoned than an appellant must file separate notices of appeal at each docket "where a single order resolves issues arising on more than one docket." ***Id***. at ___, 185 A.3d at 971.

Appellant does not argue that the Commonwealth failed to prove any element of the crimes for which he was convicted.[3] Instead, Appellant argues there was insufficient evidence to identify Appellant as the gunman who shot the two victims. Appellant criticizes the testimony offered by eyewitnesses Brown and Ruiz, which Appellant argues should not have been credited.

While Appellant characterizes these arguments as challenges to the sufficiency of the evidence, Appellant is simply attempting to attack the credibility of the prosecution witnesses and request that we accept his version of the facts. As such, Appellant is challenging the weight of the evidence, not its sufficiency. **See Commonwealth v. Wilson**, 825 A.2d 710, 713–14 (Pa.Super. 2003) (finding "[a] sufficiency of the evidence review … does not include an assessment of the credibility of the testimony offered by the Commonwealth"; rather, "[s]uch a claim is more properly characterized as a weight of the evidence challenge").

Even to the extent that Appellant's claim could be properly characterized as a sufficiency challenge, we are satisfied that there was sufficient evidence to allow the jury to find Appellant was the shooter. The prosecution presented evidence that Appellant had a motive for killing Shaheed as shown by the physical altercation between the two men two days before the shooting.

---

[3] The trial court asks this Court to find Appellant waived his sufficiency claims by failing to state with specificity in his statement pursuant to Pa.R.A.P. 1925(b) the elements of the offenses that Appellant wishes to challenge. However, we decline to find waiver as there is no indication in the record that the lower court required Appellant to file a concise statement, but rather, it appears that Appellant filed the statement without being prompted to do so.

Moreover, just hours before the shooting, Appellant came to Shaheed's home, inquired as to his location, and indicated that "[Shaheed] was going to pay for what he did." Notes of Testimony (N.T.), 10/17/17, at 222.

Shortly thereafter, when Shaheed arrived home in the early morning hours of October 6, 2015, accompanied by Ramirez and Brown, a gunman approached his vehicle, shot Shaheed in the head, and also proceeded to shoot Ramirez in the head when Ramirez tried to flee. Brown was able to flee the scene without injury and gave a statement to the police that morning indicating that Appellant was responsible for the shooting.

While Ruiz, a neighbor who witnessed the shooting, was not able to fully identify Appellant in a photo array, he gave testimony that corroborated Brown's statement to the police. Moreover, Appellant's consciousness of guilt was demonstrated by the fact that he asked his girlfriend to give him an alibi for the night of the shooting as he admittedly "got into some shit." N.T., 10/19/17, at 78.

After reviewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude there was sufficient evidence to support Appellant's convictions.

Appellant also claims that jury's verdict was not supported by the weight of the evidence. When considering this challenge, we apply the following standard of review:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

[***Commonwealth v. Widmer***]*,* 560 Pa. [308,] 321–22, 744 A.2d [745,] 753 [(2000)] (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Widmer****,* 560 Pa. at 322, 744 A.2d at 753 (quoting ***Coker v. S.M. Flickinger Co.****,* 533 Pa. 441, 447, 625 A.2d 1181, 1184–85 (1993)).

***Commonwealth v. Clay***, 619 Pa. 423, 64 A.3d 1049, 1055 (2013) (some citations omitted). To grant a new trial on the basis that the verdict is against the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court."

- 9 -

*Commonwealth v. Akhmedov*, 216 A.3d 307, 326 (Pa.Super. 2019) (*en banc*).

Appellant argues that his convictions were against the weight of the evidence because Brown, the only eyewitness to the shooting that fully identified Appellant as the perpetrator, did not specifically tell the police in his initial statement that he saw the shooter's face. Instead, Appellant asserts that Brown's initial statement only identified Appellant as the shooter as Brown recalled the clothes Appellant was wearing before the shooting occurred. Brown testified at trial that he did see Appellant's face during the shooting but that the police had not included this specific detail in recording Brown's initial statement.

While Appellant essentially asks this Court to reweigh the evidence and overturn the jury's credibility determinations, we will not substitute our judgment for that of the jury. We emphasize that "[t]he jury is the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses. *Commonwealth v. Clemons*, ___Pa.___, 200 A.3d 441, 464 (2019). Accordingly, we conclude that the trial court did not abuse its discretion in denying Appellant's challenge to the weight of the evidence.

For the foregoing reasons, we affirm.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/07/2020