**[J-51-2021] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| CRAIG STELTZ, | : | No. 10 EAP 2021 |
| | : | |
| Appellee | : | Appeal from the Judgment of |
| | : | Superior Court entered on April 14, |
| | : | 2020 at No. 179 EDA 2019 |
| v. | : | (reargument denied June 18, 2020) |
| | : | affirming the Order entered on |
| | : | December 12, 2018 in the Court of |
| WILLIAM C. MEYERS, M.D.; VINCERA | : | Common Pleas, Philadelphia |
| CORE INSTITUTE AND VINCERA | : | County, Civil Division at No. 01720 |
| INSTITUTE, | : | March Term 2016. |
| | : | |
| Appellants | : | ARGUED:  September 21, 2021 |

**DISSENTING OPINION**

**JUSTICE WECHT**                                  **DECIDED:  December 22, 2021**

I disagree with the Majority's conclusion that the trial court erred in granting Craig Steltz's request for a new trial.  "Trial courts have broad discretion to grant or deny a new trial."  *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1121 (Pa. 2000); *see Dornon v. McCarthy*, 195 A.2d 520, 522 (Pa. 1963) ("The grant of a new trial is an effective instrumentality for seeking an achieving justice in those instances where the original trial, because of taint, unfairness or error, produces something other than a just and fair result, which after all, is the primary goal of all legal proceedings.").  It is well-settled that a reviewing court will not disturb a trial court's decision to grant or deny a new trial "absent a clear abuse of discretion."  *Harman*, 756 A.2d at 1122.  While the Majority dutifully relates this standard, it has imposed upon that discretion in this case without a sufficient basis.

As the Majority aptly recounts, appellate review of an order granting a new trial follows a two-step process: "First, the appellate court must examine the decision of the trial court that a mistake occurred." *Id.* At this initial stage, two possible scopes of review apply. One is narrow: "Where the trial court articulates a single mistake (or a finite set of mistakes), the appellate court's review is limited in scope to the stated reason, and the appellate court must review that reason under the appropriate standard." *Morrison v. Dep't of Pub. Welfare*, 646 A.2d 565, 571 (Pa. 1994). The other is broader: "If the trial court leaves open the possibility that reasons additional to those specifically mentioned might warrant a new trial, or orders a new trial 'in the interests of justice,'" the appellate court examines the entire record for any reason sufficient to justify the grant. *Id.* at 570. Having determined the proper scope of its review, the reviewing court then must apply the appropriate standard. Mistakes involving discretionary acts are reviewed under an abuse of discretion standard; errors of law are scrutinized for legal error. If no mistake was made, the decision to grant a new trial must be reversed "because the trial court cannot order a new trial where no error of law or abuse of discretion occurred." *Harman*, 756 A.2d at 1123.

"If the appellate court agrees with the determination of the trial court that a mistake occurred, it proceeds to the second level of analysis. The appellate court must then determine whether the trial court abused its discretion in ruling on the request for a new trial." *Id.* (citing *Morrison*, 646 A.2d at 571). A trial court abuses its discretion when it renders a judgment that is "manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Id.* (citing *Coker v. S.M. Flickinger Co., Inc.*, 625 A.2d 1181, 1184-85 (Pa. 1993)). That members of an appellate tribunal might have reached a different result than the trial court does not establish an abuse of trial court discretion. "Where the record adequately supports the

trial court's reasons and factual basis, the court did not abuse its discretion." *Coker*, 625 A.2d at 1187.

The purported error in this case arose when the trial court initially declined to declare a mistrial after defense counsel asked the disputed question of its own expert, Dr. Adam Zoga. Thus, our scope of review is narrow. The specific question at issue—which in truth was a comment in the form of a question—asked whether Dr. Zoga was aware that, out of "[f]ive thousand . . . radiologists" who interpret musculoskeletal imagining in the United States, Steltz "couldn't find one to come into this courtroom to support Dr. [Paul] Read." Notes of Testimony ("N.T."), 8/7/2018, a.m. session, at 48. Defense counsel then emphasized the point as Steltz's counsel began to object, adding "Not one, couldn't find one?" *Id.* at 49.

"Whether remarks by counsel warrant a new trial requires a determination based upon an assessment of the circumstances under which the statements were made and the precaution taken by the [trial] court and counsel to prevent such remarks from having a prejudicial effect." *Siegal v. Stefanyszyn*, 718 A.2d 1274, 1277 (Pa. Super. 1998). While a trial judge has a duty "to take affirmative steps to cure harm, once an offensive remark has been objected to . . ., there are certain instances where the comments of counsel are so offensive or egregious that no curative instruction can adequately obliterate the taint." *Id.* (citing, as an example of such egregious comments, *Dannals v. Sylvania Township*, 99 A. 475, 476 (Pa. 1916), in which plaintiff's counsel characterized a defense witness as a "drunkard" and "guttersnipe" from the "slums").

The Superior Court applied the foregoing precedents here. The court began by identifying "the mistake," namely, the trial court's acknowledgement that it erred in denying Steltz's motion for a mistrial. The trial court explained that, upon further reflection, "the harm caused by [defense] counsel's egregious statement that not one

musculoskeletal radiologist amongst the [five thousand] who practiced in the United States could be found to support [Steltz's] reading of the MRI" could not possibly have been ameliorated with a curative instruction. Tr. Ct. Op., 12/12/2018, at 6-7. In the trial court's view, there was no purpose to the question "but to prejudice the jury," because Dr. Zoga would not have been privy to Steltz's trial preparations. *Id.* at 10. Instead, the court found that the question "was a roundabout way to use Dr. Zoga as a prop for counsel to opine on the credibility of Steltz's evidence, which neither counsel nor experts are permitted to do." *Id.* at 11. Furthermore, the court explained that the crux of the question was belied by the record, as the defense was on notice via Steltz's pretrial memorandum that Dr. Jaime Checkoff, a musculoskeletal radiologist, was retained as a potential expert witness. *Id.*

The Superior Court rejected Appellants' efforts to parse defense counsel's question-*cum*-commentary by emphasizing that Steltz did not in fact call an expert radiologist to "come into this courtroom to support Dr. Read." The majority explained that counsel's choice of words—"couldn't find"—which he repeated for dramatic effect, was "quite different from stating Steltz **did not find** another radiologist," as Appellants suggested in their brief below. *Steltz v. Meyers*, 179 EDA 2019, 2020 WL 1867021, at *5 (Pa. Super. Apr. 14, 2020) (emphasis in original). The panel also agreed with the trial court's determination that the record belied the defense's contention that Steltz "couldn't find" another radiologist to support Dr. Read, because Steltz's pretrial memorandum identified one such supportive radiologist in Dr. Checkoff. Likening this case to *Siegal*, which also involved an allusion to the plaintiff's failure to obtain expert medical testimony, the lower courts concluded that counsel's question here was improper and unfounded.

On this first point, there appears to be record support for the trial court's conclusion that it erred in failing to grant a mistrial. Steltz *had found* an expert to support Dr. Read's

assessment of the MRI, and the defense was aware of that ahead of trial. Nonetheless, counsel persisted in using his own expert as a foil for counsel to sardonically criticize Steltz for being unable to find expert support for his principal claim. It is unlikely that the trial court's curative instruction—conveying in general terms that the statements of counsel are not evidence—would have overcome the denigrating effect of the prejudicial commentary on the credibility of Dr. Read's testimony in the jury's mind. Moreover, the trial court did not give the instruction immediately. Instead, the court gave it after a lunch recess. This delay may have hardened one or more jurors' views, and certainly is relevant context for the trial court's reconsideration. *See Harman*, 756 A.2d at 1123 ("Even under a narrow scope of review, the appellate court might still need to examine the entire record to determine if there is support for any of the reasons provided by the trial court."). The Majority does not assess the strength of the curative instruction through that lens.

Had the Court agreed with me on this first point, our next step would be to ask whether the trial court abused its discretion when it granted Steltz's motion. Determining whether the trial court abused its discretion in this context and under these circumstances is a tall order indeed.[1]

Because the central issue at this stage is whether the trial court's prejudice analysis was supported by the record, the discussion naturally dovetails with my view on the mistake prong of the inquiry. As explained above, the trial court considered the "actual substance of the question, the insinuation that lay behind it, and its potential [to] fix unfair prejudice against [Steltz] in the minds of the jurors." Tr. Ct. Op. at 13. The court determined that "the question was so inflammatory and prejudicial so as to preclude a fair

---

[1] *Cf. Grove v. Port Auth. of Allegheny Cty.*, 218 A.3d 877, 900 (Pa. 2019) (Saylor, C.J., dissenting) ("Where appellate courts cannot express confidence that an outcome would have been the same in the absence of a preserved trial error, the courts ought to be more receptive to the position that errors are prejudicial.").

trial and to have undoubtedly influenced the jury, distracting . . . from the pivotal issue and influencing their verdict." *Id.* (citation omitted). Like the lower courts, I am not persuaded by Appellants' claim that defense counsel neutralized his improper commentary by tacking a "—did you know?" onto the end of his statement.

More importantly, Judge Tsai was in the best position to observe defense counsel's demeanor and inflection—which we cannot glean from a cold transcript—when counsel asked the loaded question. From that vantage, she could perceive what impact, if any, it may have had on the jury. She found that counsel's misleading commentary indelibly tainted the proceedings by making a "deliberately prejudicial statement in the guise of a question," which effectively "served as a mechanism to editorialize about the credibility of [Steltz's] evidence." *Id.* at 13. She concluded that the question's "*unavoidable effect . . . was to prejudice the factfinder*," rendering it "incapable of fairly weighing the evidence and entering an objective verdict." *Id.* (emphasis added). That language is significant; it precisely tracks the standard that Appellants assert in their briefs to this Court should have been applied by the trial court but wasn't. Steltz claims that Appellants waived that particular argument because they did not raise it in their petition for allowance of appeal, a review of which confirms that the "unavoidable effects" standard was not mentioned at all when they sought discretionary review in this Court. Rather, Appellants' principal contention was that the lower courts "misapplied and fundamentally altered Pennsylvania's *settled standard* for prejudice caused by statements or questions of counsel." Petition for Allowance of Appeal, 225 EAL 2020, at 5 (emphasis added).

As it resolves this case on the first-step inquiry, the Majority does not speak to the issue we ostensibly granted review to consider and clarify in the first place: the applicable prejudice standard in these circumstances. Nonetheless, in accordance with existing precedent, the Superior Court concluded that the trial court's assessment of defense

counsel's conduct was supported by the record, and that the curative instruction Judge Tsai provided in response to it was inadequate. I see no grounds on which to conclude that, in reconsidering her initial decision not to grant a mistrial, Judge Tsai's judgment was manifestly unreasonable, arbitrary or capricious, a misapplication of law, or motivated by partiality, prejudice, bias, or ill will. Absent one of those conditions, the trial court did not abuse its discretion.

In the end, this is an unsatisfying case, the primary takeaway of which is that mistakes were made. Granting *allocatur* may have been one of them. Now, because the Majority does not reach the legal issue that the Appellants briefed and argued before us, we do nothing more than address a claim of error in a fact-specific appeal under a highly deferential abuse-of-discretion standard—all factors that typically weigh *against* granting allowance of appeal. As this case demonstrates, disputes of this nature rarely present an opportunity to elucidate broad legal principles or otherwise refine or advance Pennsylvania law. We might, as intended, have provided guidance to the lower courts for assessing the prejudicial impact of statements made by counsel in a civil trial. To that end, Appellants implored us to adopt a new standard more commonly employed in the criminal context—"unavoidable effects"—the very standard that the trial court expressly adopted when it analyzed the impact of defense counsel's tactics here. However, as noted, it appears that Appellants failed to preserve that argument, and the Majority's resolution moots the issue in any event.

With these considerations in mind, I would dismiss this appeal as improvidently granted. But asked to propose a ruling on these facts and with this record, I would uphold the trial court's well-reasoned decision to grant a new trial. Because the Court rules to the contrary, I respectfully dissent.

Chief Justice Baer and Justice Donohue join this dissenting opinion.