J-A05021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LUCAS JOSEPH CABASSA | |
| Appellant | No. 739 EDA 2015 |

Appeal from the Judgment of Sentence November 13, 2014
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0002799-2013

BEFORE:  OLSON, J., OTT, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                    **FILED APRIL 11, 2016**

Lucas Joseph Cabassa appeals from the judgment of sentence imposed November 13, 2014, in the Court of Common Pleas of Northampton County, following his conviction on charges of first-degree murder and possession of a firearm by a minor.[1]  In a related matter, Cabassa pled guilty to a single count of person not to possess firearms.[2]  He received an aggregate sentence of 51 years to life incarceration.  In this timely appeal, Cabassa claims the trial court erred in excluding text messages from victim's cell phone and that the verdict was against the weight of the evidence.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a) and 6110.1(a), respectively.

[2] 18 Pa.C.S. § 6105(a)(1).

Following a thorough review of the submissions by the parties, relevant law, and the certified record, we conclude these issue are meritless. However, we also note Cabassa received an illegal sentence on the charge of persons not to possess firearms.[3] Accordingly, we are required to vacate the sentence and remand the matter for imposition of a new sentence.

The relevant facts underlying this appeal took place between the afternoon of June 1, 2013 and the early morning hours of June 2, 2013. On June 1, 2013, Cabassa and three of his friends were spending time together. The day was spent drinking, smoking marijuana, taking Xanax pills, playing video games, swimming in the Saucon Creek, and playing basketball. The three friends were Jonathan "Big John" Martinez,[4] Zach Ortiz, and Edwin "Boobie" Rodriguez. During the day, Cabassa showed the others a .22 caliber revolver he had obtained. At approximately 2:30 a.m., June 2, 2013, the four were standing around an electric junction box on Argus Circle, Bethlehem, Pennsylvania. A friend dropped off Jose Reyes, who was on his way to his grandparents' home on Argus Circle. The four invited Reyes to join them and he did.

---

[3] At oral argument, the Commonwealth stated the sentence was illegal regarding person not to possess a firearm. We appreciate the Commonwealth's candor.

[4] Relevant to this appeal, "Big John" was so named because he is 6' 6" tall and weighs approximately 385 pounds.

The original four all began making jokes at Reyes's expense and Reyes started to leave to go home to his grandparents' house. However, "Big John" called him back. As Reyes returned, "Boobie" sucker punched Reyes. "Big John" then punched Reyes, knocking him to the ground. "Big John" then began kicking Reyes. Cabassa then offered Reyes a hand to stand up, but then sucker-punched Reyes, too. Reyes's grandparents apparently heard the commotion and came outside, causing the four to run away. Rather than go inside, Reyes got a cigarette and smoked it outside. As he did, the victim, Joseph Rodriguez,[5] accompanied by some other men,[6] came by and started talking to Reyes, asking him what had happened. As Rodriguez and the other men started to leave, they ran into "Big John" and the others, who were returning to the scene. Rodriguez confronted "Big John" about hitting Reyes and then sucker punched "Big John". Rodriguez was significantly smaller than "Big John", standing approximately 5' 8" tall and weighing approximately 140 pounds.

"Big John" then began to beat Rodriguez, hitting him several times in the face. While this was happening, Reyes began fighting with "Boobie." Cabassa was standing away from the fighting. After "Big John" hit Rodriguez four or five times in the face, stunning him into standing with his hands

_____

[5] Rodriquez knew Reyes's father.

[6] The actual number of people with Rodriguez was not established. The number appears to have been at least two, but fewer than ten.

lowered, Cabassa drew his revolver and fired a single shot at Rodriguez. The bullet struck Rodriguez in the right temple, killing him. After the shooting, Cabassa, Ortiz, "Big John" and "Boobie" fled. Cabassa, Ortiz and Big John all ran to Ortiz's house, where they spent the rest of the night.

The police arrived shortly after the shooting and found Rodriguez, still alive, lying in the grass. He was transported to a local hospital, where he died shortly thereafter. The police found a cellphone in his left front pocket. The police eventually located a number of text messages stored in the cellphone. Some of these messages were the subject of the preclusion order at issue in this appeal.

Cabassa claimed both self-defense and defense of others at trial. He testified he believed his friend "Big John" was in danger regarding his fight with the victim. He also claimed he fired at Rodriguez in response to being charged by two of Rodriguez's cohorts.

Cabassa argues the trial court abused its discretion by excluding text messages sent by the victim as irrelevant. Our standard of review regarding the admission of evidence is well settled:

> With regard to the admission of evidence, we give the trial court broad discretion, and we will only reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of the record.

*Commonwealth v. Flamer*, 53 A.3d 82, 86 (Pa. Super. 2012) (citations and quotation marks omitted).

We also recognize "that hearsay evidence concerning the victim's state of mind is admissible only where the victim's state of mind is a "factor in issue" at trial." *Commonwealth v. Luster*, 71 A.3d 1029, 1041 (Pa. Super. 2013) (citation omitted). A victim's "state of mind evidence is relevant where an issue of self-defense, suicide, or accidental death is raised by the defendant." *Commonwealth v. Moore*, 937 A.2d 1062, 1070 (Pa. 2007) (citation omitted).

As noted, the police found a cellphone on or under the victim when they arrived on the scene shortly after the shooting. Many text messages were found on the phone. Cabassa sought to introduce those messages as evidence of Rodriguez's intent to commit violence against "Big John" for having beaten Reyes. Accordingly, this state of mind evidence was intended to support Cabassa's claim of self-defense/defense of others. A list of those messages is referred to and is part of the reproduced record, but was never formally made part of the certified record; therefore, we cannot consider the list as a whole. However, the substance of several of the messages was made part of the certified record during argument on their admissibility at trial. Accordingly, the record is such that we are able to conduct a meaningful review.

Five of the text messages sought to be introduced by trial counsel were sent by Rodriguez to an unnamed person or people between the hours

of 12:53 a.m. and 3:06 a.m. on the morning of June 2, 2013. However, the evidence at trial indicated that Rodriguez did not know about Reyes's beating until sometime after 3:15 a.m. Accordingly, none of the five texts were relevant.[7]

One of the text messages was from the relevant period, having been sent at 3:30 a.m. That message read: "U knows who Big John from Five Points is. He just jump my man's son. I need to know where these niggas at." **See** N.T. Trial, 4/9/2104, at 357.[8] This message conveys a clear meaning that Rodriguez is looking for his cohorts and intends to confront "Big John." Cabassa purportedly sought to introduce the text messages to show Rodriguez wanted to pick a fight. However, the message provided no information that the jury did not already know. The jurors had been presented with evidence that Rodriguez and some others arrived at the scene and confronted "Big John." Although the text was otherwise relevant,

_____

[7] The five messages make reference to a fist fight between "Saby and Ricky" with "Pitie", as well as an apparently different problem with someone named "Big Head Izzy." In referring to "Big Head Izzy", there was a mention that Rodriquez needed "all the hammers"; "hammers" meaning guns. There is no evidence of record that Rodriguez or any of his cohorts arrived in possession of, nor used, any weapons. The only gun at the scene was the gun Cabassa used to kill Rodriguez. Cabassa put forth no argument as to how these messages related to him.

[8] Assuming the time signature on the text message is correct, the police were dispatched to the scene at 3:34 a.m. and arrived at the scene at 3:37 a.m., by which time Rodriguez had been fatally wounded.

it was redundant.[9] As such, any error in precluding this message was harmless. *See Commonwealth v. Melvin*, 103 A.3d 1, 20 (Pa. Super.

_____

[9] Cabassa sought admission of the text messages to support his claim of self-defense/defense of others. Although no one raised this argument, it is not certain that Cabassa was legally entitled to that defense. In relevant part, 18 Pa.C.S. § 506 states:

> The use of force upon or toward the person of another is justifiable to protect a third person when: (1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person he seeks to protect.

18 Pa.C.S. § 506.

Essentially, section 506 applies the rules of self-defense to the defense of others. In relevant part, 18 Pa.C.S. § 505 states:

> An actor who is not engaged in a criminal activity, who is not in illegal possession of a firearm and who is attacked in any place where the actor would have a duty to retreat under paragraph (2)(ii) has no duty to retreat and has the right to stand his ground and use force, including deadly force, if:
>
> > (iii) the person against whom the force is used displays or otherwise uses:
> >
> > > (A) a firearm or replica of a firearm; or
> > >
> > > (B) any other weapon readily or apparently capable of lethal use.

18 Pa.C.S. 505 (2.3)(iii)(A)-(B).

Applying those requirements to the defense of others, Cabassa was a minor in possession of a firearm, meaning Cabassa was in possession of an illegal firearm, and Rodriquez never displayed or otherwise used a firearm or any other purportedly lethal weapon. Because Cabassa was not allowed to
*(Footnote Continued Next Page)*

2014) (harmless error exists where defendant suffers no or *de minimis* prejudice).

Based on the above, we find no abuse of discretion by the trial court in excluding the text messages sent from Rodriguez's phone.

Next Cabassa argues the verdict was against the weight of the evidence. Our scope and standard of review are well settled:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. ***Commonwealth v. Widmer***, 560 Pa. 308, 319, 744 A.2d 745, 751-51 (2000); ***Commonwealth v. Brown***, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. ***Widmer***, 560 Pa. at 319-20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.' " ***Id***. at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Brown***, 538 Pa. at 435, 648 A.2d at 1189.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
> > Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of*

*(Footnote Continued)* ⸺⸺⸺⸺⸺⸺⸺⸺

defend himself with an illegal firearm, nor use lethal force against a person who did not visibly possess a lethal weapon, it appears he was not entitled to so defend "Big John."

> *whether the verdict is against the weight of the evidence.*
> ***Brown***, 648 A.2d at 1189. Because the trial judge has had
> the opportunity to hear and see the evidence presented,
> an appellate court will give the gravest consideration to the
> findings and reasons advanced by the trial judge when
> reviewing a trial court's determination that the verdict is
> against the weight of the evidence. ***Commonwealth v.***
> ***Farquharson***, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One
> of the least assailable reasons for granting or denying a
> new trial is the lower court's conviction that the verdict
> was or was not against the weight of the evidence and that
> a new trial should be granted in the interest of justice.

***Widmer***, 560 Pa. at 321-22, 744 A.2d at 753 (emphasis added).

> This does not mean that the exercise of discretion by the trial
> court in granting or denying a motion for a new trial based on a
> challenge to the weight of the evidence is unfettered. In
> describing the limits of a trial court's discretion, we have
> explained:

>> The term "discretion" imports the exercise of judgment,
>> wisdom and skill so as to reach a dispassionate conclusion
>> within the framework of the law, and is not exercised for
>> the purpose of giving effect to the will of the judge.
>> Discretion must be exercised on the foundation of reason,
>> as opposed to prejudice, personal motivations, caprice or
>> arbitrary actions. Discretion is abused where the course
>> pursued represents not merely an error of judgment, but
>> where the judgment is manifestly unreasonable or where
>> the law is not applied or where the record shows that the
>> action is a result of partiality, prejudice, bias or ill-will.

> ***Widmer***, 560 Pa. at 322, 744 A.2d at 753 (*quoting* ***Coker v.***
> ***S.M. Flickinger Co.***, 533 Pa. 441, 447, 625 A.2d 1181, 1185-85
> (1993)).

***Commonwealth v. Clay***, 64 A.3d 1049, 1054-55 (Pa. 2013) (emphasis in

original).

In denying Cabassa's post-sentence motion on this issue, the trial

court stated:

In the instant case, [Cabassa] relies upon his characterization of the evidence, that he was a scared young juvenile "confronted with a gang of adults"[10] at the time of the murder, who did not have the specific intent to kill Joseph Rodriguez. The Court having already determined that the evidence of record was sufficient to the jury's finding of specific intent, it likewise finds that the jury's verdict was not against the weight of the evidence. In light of the evidence that [Cabassa] shot and killed the victim from a distance of at least twenty feet at a time when the victim was engaging in a losing fight with a third party, the jury's verdict does not shock the conscience.

Trial Court Opinion, 2/19/2015, at 6.

Our review of the certified record reveals no abuse of discretion in denying Cabassa's claim that the verdict was against the weight of the evidence.

Although Cabassa is not entitled to relief on either of the issues he raised before this Court, we note that he was illegally sentenced regarding his conviction of persons not to possess firearms, 18 Pa.C.S. § 6105(a)(1). "[L]egality of sentence questions are not waivable and may be raised *sua sponte* by this Court." **Commonwealth v. Mosley**, 114 A.3d 1072, 1087 (Pa. Super. 2015) (citation omitted).

Generally, a violation of section 6105(a)(1) is classified as a first-degree misdemeanor. **See** 18 Pa.C.S. § 6119. However, Cabassa was charged with, convicted of and sentenced to violating 18 Pa.C.S. § 6105(a)(1) as a second-degree felony pursuant to 18 Pa.C.S. §

_____

[10] **See** Cabassa's Brief in Support of Post-Sentence Motions, 2/11/2015, at 7.

- 10 -

6105(a.1)(a), which enhances the grade of the crime from a first-degree misdemeanor to second-degree felony if the person convicted had a prior conviction for certain enumerated felonies, including burglary. It is undisputed that Cabassa had a prior adjudication for burglary. Accordingly, Cabassa was sentenced to 4-8 years' incarceration on this charge.[11]

While this appeal was pending, our Supreme Court issued its decision in **Commonwealth v. Hale**, 128 A.3d 781 (Pa. 2015), that determined that for purposes of section 6105(a.1)(a), a juvenile adjudication is not the equivalent of a conviction. Accordingly, the enhancement found at section 6105(a.1)(1) cannot apply to prior juvenile adjudications. Cabassa is subject to punishment for violating section 6105(a)(1) as a first-degree misdemeanor. Because he was sentenced consecutively for all his convictions, we believe vacating the sentence for section 6105(a)(1) upsets the trial court's sentencing scheme. "[W]here this Court vacates a conviction in a multiple count appeal, and vacating the conviction upsets the trial court's overall sentencing scheme, this Court must remand for re-sentencing because sentencing lies within the sole discretion of the trial court." **Commonwealth v. Brown**, 26 A.3d 485, 510 (Pa. Super. 2011)

---

[11] Cabassa was also sentenced to 46 years to life for first-degree homicide and 1-2 years' incarceration for minor in possession of a firearm. All three sentences were consecutive to produce the aggregate 51 years-life sentence Cabassa received.

(citation omitted). Therefore, we vacate the entire judgment of sentence and remand this matter resentencing on all counts.[12]

In sum, we conclude the issues raised on appeal warrant no relief. However, because, in light of **Hale, supra**, the sentence imposed on the charge of persons not to possess firearms is illegal, we vacate the judgment of sentence and remand for resentencing.

Judgment of sentence vacated. This matter is remanded for resentencing consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/11/2016

_____

[12] By vacating the entire sentence, we do not mean to suggest that the trial court should amend the sentences imposed for homicide and minor not to possess a firearm. We are simply returning this matter to its original sentencing posture. However, we do note an important typographical error on the Court Commitment Form (DC-300B (Part 1)), docket entry number 67. This form indicates Cabassa was sentenced to a term of 5552 months to life incarceration for first-degree murder. 5552 months is more than 460 years. The correct figure for the sentence announced is 552 months. As the sentence has been vacated, we trust, whatever the new sentence may be, the correct figure will be transcribed.