J-S63018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SEAN AUSTIN, | |
| Appellant | No. 966 EDA 2015 |

Appeal from the Judgment of Sentence November 7, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009078-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED OCTOBER 21, 2016**

Appellant, Sean Austin, appeals from the judgment of sentence entered following his convictions of one count each of second-degree murder, robbery, burglary, unlawful possession of a firearm, possession of an instrument of crime ("PIC"), and two counts of conspiracy.  We affirm.

The trial court summarized the underlying facts of this case as follows:

> In the early morning hours of July 12, 2011, after having developed a criminal plan with Oren Thomas ("Thomas") also known as "O" and Basemy Gabriel ("Gabriel") also known as "Basir" or "Boz"[], Appellant and Gabriel entered the apartment of the decedent, Ronald Taylor ("Taylor"), with the intent to steal money and drugs.  Thomas had told Appellant and Gabriel how to gain access to the apartment and provided information as to where the drugs would be found once they were inside.  The apartment was located on the second floor of 1830 West

_____

[*]  Former Justice specially assigned to the Superior Court.

Cheltenham Avenue in the City and County of Philadelphia. It was after midnight when the two (2) men entered the apartment and Appellant was armed with a revolver. Taylor and his ten (10) year-old son were asleep on the couch, however the decedent awoke and confronted Appellant. Appellant shot decedent two (2) times in the chest with a .32 caliber revolver prior to fleeing the apartment with Gabriel. The decedent's son did not wake up until the next morning, whereupon he discovered his father dead. The child searched his father's pockets looking for a phone to call for help, however found that the phone was gone.

Thomas waited nearby for Appellant and Gabriel to enter and rob the decedent. From his vantage point, he could see Appellant, Gabriel, and Taylor. As he waited, he heard two (2) gunshots then left the area and went to Appellant's house. When Appellant arrived home, he told Thomas that he had to shoot decedent in the leg and that he had gotten nothing in the robbery. The next day Appellant and Thomas spoke again and Appellant admitted shooting decedent and "putting him to sleep".

Taylor was pronounced dead at 8:33 A.M. on July 12, 2011. An autopsy was performed by Associate Medical Examiner Dr. Marlon Osbourne. Decedent had suffered two (2) gunshot wounds, one (1) to the midline chest and one (1) to the left side of the chest, which caused extensive internal bleeding. The cause of death was found to be a gunshot wound to the chest. The manner of death was found to be homicide. Both pieces of ballistics evidence from the decedent's body were consistent with having been fired from a .32 caliber revolver.

Thomas was later arrested and made a statement to police after receiving his Miranda[1] warnings. Thomas entered a guilty plea to the Murder, Conspiracy, and Robbery of Taylor prior to testifying at Appellant's trial. Thomas was awaiting sentencing at the time he testified at Appellant's trial. Gabriel was also arrested and made a statement to police after receiving his Miranda[2] warnings. Gabriel entered a guilty plea to the Murder of Taylor prior to testifying at Appellant's trial.

_____

[1] Miranda v. Arizona, 384 U.S. [436], at 475-477, 86 S.Ct. 1602, at 1628-1629, 16 L.Ed.2d 694 (1966). A person must, before any questioning, be warned that

he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to presence of an attorney, retained or appointed.

[2] Id.

Trial Court Opinion, 9/16/15, at 2-4.

On August 29, 2014, a jury convicted Appellant of the crimes stated above. On November 7, 2014, the trial court sentenced Appellant to serve a term of incarceration of life without parole for the second-degree murder conviction. No further penalty was imposed for the remaining convictions. Appellant filed timely post-sentence motions, which were denied by operation of law on March 13, 2015. This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. Whether the adjudication of guilt is against the weight of the evidence and shocking to one's sense of justice where there was no physical or scientific evidence linking the Appellant to possession of any firearm or to the victim's apartment, where the witnesses were corrupt and polluted sources who received favorable treatment from the Commonwealth in return for their testimony against the Appellant, where there was no corroboration and where the Appellant lived openly in the neighborhood without any indicia of guilt until his arrest.

II. Whether the adjudication of guilt is based upon insufficient evidence because it was an unreasonable inference in contradiction to the physical facts and in contravention to human experience to conclude beyond a reasonable doubt that the witnesses were truthful where there was no physical or scientific evidence linking the Appellant to the possession of a firearm or to the victim's apartment and where the only witnesses against the Appellant were corrupt and polluted sources seeking favorable treatment from the Commonwealth.

Appellant's Brief at 6.

Appellant first argues that the trial court erred in denying his post-sentence motion challenging the weight of the evidence. Appellant's Brief at 16-18. Essentially, Appellant contends the verdict reflects that the jury improperly credited the testimony of his co-conspirators indicating that Appellant killed Taylor during a burglary of Taylor's home.

In **Commonwealth v. Clay**, 64 A.3d 1049 (Pa. 2013), our Supreme Court set forth the following standards to be employed in addressing challenges to the weight of the evidence:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 560 Pa. 308, 319, 744 A.2d 745, 751-[7]52 (2000); **Commonwealth v. Brown**, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 560 A.2d at 319-20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" **Id**. at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Brown**, 538 Pa. at 435, 648 A.2d at 1189.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

>> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question*

*of whether the verdict is against the weight of the evidence.* **Brown**, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **Commonwealth v. Farquharson**, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Widmer**, 560 Pa. at 321-[3]22, 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

**Widmer**, 560 A.2d at 322, 744 A.2d at 753 (quoting **Coker v. S.M. Flickinger Co.**, 533 Pa. 441, 447, 625 A.2d 1181, 1184-[11]85 (1993)).

***Clay***, 64 A.3d at 1054-1055. "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Diggs***, 949 A.2d 873, 879-880 (Pa. 2008).

The jury, sitting as the finder of fact, chose to believe the evidence presented by the Commonwealth and to disregard the version of events presented by Appellant, as was its right. The trial court made the following comprehensive observation regarding the evidence offered by the Commonwealth:

> This issue lacks merit as in the instant case, the jury's verdict of guilty does not shock the conscience. At trial, the Commonwealth presented the testimony of both co-conspirators and the decedent's son to establish that Appellant was the perpetrator of Second Degree Murder. Thomas testified that he knew Taylor, had been in his apartment before, and believed that Taylor had approximately $25,000-$35,000 worth of marijuana in his apartment on the night of July 11, 2011. (N.T. 8/26/14 at 118-119, 144). Thomas told Appellant and Gabriel about his belief, and enlisted their help to rob Taylor. Id. at 118, 119. Thomas told Appellant and Gabriel how to gain access to the apartment and provided information as to where the drugs would be found once they were inside. Id. at 118-119, 121.
>
> The Commonwealth then presented the testimony of Gabriel who corroborated the testimony of Thomas. Gabriel testified that the three (3) males planned for Appellant and Gabriel to enter Taylor's apartment and rob him. Id. at 174. The Appellant was known to Gabriel as he lived on Gabriel's block. Id. at 173. Gabriel testified that he had entered the apartment of decedent with Appellant with the intent of robbing the decedent. Id. at 175. Gabriel saw a revolver in Appellant's hand as they went up the stairs to the apartment. Id. When they entered the apartment both decedent and a small boy were asleep on a couch inside. Id. at 176. As Gabriel and Appellant searched the apartment, he heard an argument between Appellant and decedent followed by a gunshot. Id. at 176. As he was leaving the apartment, Gabriel saw Appellant with a gun

in his hand, and Taylor on the floor. Id. at 178. Appellant shot the decedent, causing serious bodily injury that resulted in his death. In a statement to police, Thomas testified that Appellant had a .32 caliber revolver on the night of the incident. Id. at 141-142. Both pieces of ballistics evidence from the decedent's body were consistent with having been fired from a .32 caliber revolver. (N.T. 8/27/14 at 29, 30). Taylor's son testified that his father's cell phone was gone. (N.T. 8/26/14 at 77.)

Thomas testified that at the time of the Robbery, he waited outside of the decedent's house where he could see Appellant and Gabriel through the windows in Taylor's apartment. Id. at 124. As he was waiting, Thomas heard two (2) gunshots then he went to Appellant's house where Appellant and Gabriel were already located. Id. at 124. Appellant told Thomas that he had gotten nothing in the robbery, and later admitted shooting decedent and "putting him to sleep". Id. at 125, 127. Gabriel testified that subsequent to the robbery Appellant said he had to "put decedent down". Id. at 183.

The Commonwealth also provided testimony through Thomas that he had entered a guilty plea to Murder, Robbery, and Conspiracy as related to the decedent and was awaiting sentencing. Id. 108 et. seq., see 117, 142-144. Thomas also testified that he had a prior conviction for Robbery. Id. Thomas testified that [he] hoped that he would receive something less than the maximum of 50 to 100 years that could result from his plea, by testifying against Appellant. Id. at 153-154. Gabriel testified that he had also entered a guilty plea to Third Degree Murder and Conspiracy as related to the decedent but that he had not been sentenced yet. Id. at 172, 193. Gabriel testified that he hoped that he would receive something less than the maximum of 40 to 80 years that could result from his plea, by testifying against Appellant. Id. at 205-207. The jury was instructed with the standard instruction on how to treat accomplice testimony as well as how to treat testimony where there had been a prior crimin falsi conviction. The jury, as the fact finder, had the sole discretion of assessing the credibility of witnesses at trial. The finder of fact is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. Here, the jury chose to believe Appellant's co-conspirators in tandem with the ballistics evidence and came to the conclusion that Appellant was guilty of Second Degree Murder. The verdict was not against the weight of the evidence.

Trial Court Opinion, 9/16/15, at 5-7.

Based upon our review of the record, we are compelled to agree with the trial court. Here, the jury was free to believe all, part, or none of the evidence against Appellant. The jury weighed the evidence, both testimonial and physical, and concluded Appellant perpetrated the crimes in question. This determination is not so contrary to the evidence so as to shock one's sense of justice. We decline Appellant's invitation to assume the role of fact-finder and to reweigh the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in refusing to grant relief on Appellant's challenge to the weight of the evidence.

In his second issue, Appellant purports to argue that there was insufficient evidence to support his convictions. Appellant's Brief at 18-20. We analyze arguments challenging the sufficiency of the evidence under the following parameters:

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these

principles, we must review the entire record and consider all of the evidence introduced.

***Commonwealth v. Trinidad***, 96 A.3d 1031, 1038 (Pa. Super. 2014) (quoting ***Commonwealth v. Emler***, 903 A.2d 1273, 1276-1277 (Pa. Super. 2006)).

Instantly, for the following reasons, Appellant has abandoned any argument concerning the sufficiency of the evidence. Regarding sufficiency-of-the-evidence issues, an appellant must specify the elements upon which the evidence was insufficient in order to preserve the issue for appeal. ***See Commonwealth v. Williams***, 959 A.2d 1252, 1257–1258 (Pa. Super. 2008) (finding waiver where the appellant failed to specify the elements of particular crime not proven by the Commonwealth). ***See also Commonwealth v. Gibbs***, 981 A.2d 274, 281 (Pa. Super. 2009) (finding claim waived under ***Williams*** for failure to specify either in Rule 1925(b) statement or in argument portion of appellate brief which elements of crimes were not proven beyond a reasonable doubt).

Appellant's Pa.R.A.P. 1925(b) statement presents the following pertinent issue, which fails to specify the elements of the crimes allegedly not proven by the Commonwealth:

> 2. The adjudication of guilt is based upon insufficient evidence because it was an unreasonable inference to conclude beyond a reasonable doubt that the witnesses were telling the truth where there was no physical and scientific evidence linking the defendant to the possession of any firearm or to the victim's apartment and where the only witnesses against the defendant

were corrupt and polluted sources seeking favorable treatment from the Commonwealth.

Pa.R.A.P. 1925(b) Statement (Record Entry 14), 4/21/15, at 1.

Likewise, Appellant has failed to specify in his appellate brief the elements of the various crimes that allegedly were not established by the Commonwealth. Rather, Appellant's argument consists of citation to general case law, challenges to the credibility and reliability of the testimony offered by his co-conspirators, and the lack of physical evidence produced by the Commonwealth. Appellant's Brief at 18-20. Appellant's argument for this issue begins with the following introduction:

> While legally the Commonwealth should be given the benefit of all reasonable inferences as the verdict winner such deference should not be accorded where the evidence that was offered to support the verdict is in contradiction to the physical facts and defies human experience. Here the benefit that is to be accorded to the Commonwealth rests solely on the credibility determinations the jury made as to the truthfulness of the testimony of Thomas and Basemy. But such a determination was not reasonable because of the absence of physical facts corroborating their corrupt and polluted testimony.

Appellant's Brief at 18-19. Appellant's argument on this issue ends with the following summation:

> Furthermore, the Appellant never fled, never concealed himself, never threatened another to silent and never displayed any of the indicia of guilt or guilty conscious. That the jury would have ignored that vital circumstance and credited the evil motives of Thomas and Basemy was similarly not reasonable. Since the inferences drawn from the testimony as to the credibility of Thomas and Basemy were unreasonable and because the jury unreasonably inferred the Appellant's guilt in contradiction to the physical facts and in contravention to human experience this

verdict is not based upon sufficient evidence and should be vacated.

Appellant's Brief at 19-20. Consequently, Appellant's non-specific claim challenging the sufficiency of the evidence, which fails to state the exact elements of the particular crimes allegedly not proven by the Commonwealth, is waived. **Williams**.

Moreover, to the extent that Appellant contends that the jury failed to properly consider the evidence and wrongly credited the testimony presented by the Commonwealth in determining the verdicts, we observe that a review of the sufficiency of the evidence does not include an assessment of the credibility of the testimony. **Commonwealth v. Wilson**, 825 A.2d 710, 713-714 (Pa. Super. 2003). Such a claim is more properly characterized as a challenge to the weight of the evidence. **Id**. A challenge to the weight of the evidence questions which evidence is to be believed. **Commonwealth v. Charlton**, 902 A.2d 554, 561 (Pa. Super. 2006). Indeed, claims challenging the weight of the evidence and sufficiency of the evidence are clearly distinct. **See Commonwealth v. Widmer**, 744 A.2d 745 (Pa. 2000) (discussing the distinctions between a claim challenging the sufficiency of the evidence and a claim that the verdict is against the weight of the evidence). **See also Commonwealth v. Palo**, 24 A.3d 1050, 1055 (Pa. Super. 2011) (explaining that the appellant's "sufficiency" argument directed entirely to the credibility of the Commonwealth's chief witness challenged the weight, not the sufficiency, of the evidence). "A true weight

of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006) (quoting *Commonwealth v. Galindes*, 786 A.2d 1004, 1013 (Pa. Super. 2001)).

Thus, this argument goes to the credibility of the testimony of the witnesses, and is, therefore, not an attack on the sufficiency of the evidence, but an allegation regarding the weight it should have been afforded. *Commonwealth v. Griffin*, 65 A.3d 932, 939 (Pa. Super. 2011). Therefore, to the extent that Appellant intermingles his sufficiency argument with challenges to the jury's findings pertaining to the credibility of the witnesses and determination of the weight of the evidence presented, we observe that we have reviewed a proper challenge to the weight of the evidence in the first issue presented by Appellant and concluded that no relief is due.[1]

Judgment of sentence affirmed.

---

[1] In the event that we had not found Appellant's attempted challenge to the sufficiency of the evidence waived and concluded that it presents an appropriate challenge to the sufficiency of the evidence, we would have affirmed on the basis of the trial court's discussion of the issue, which concludes as follows: "All of the elements of the various crimes for which [A]ppellant was convicted were established during trial. Thus, this [c]ourt finds that viewed in a light most favorable to the Commonwealth, there was sufficient evidence to establish the Appellant as the perpetrator of these crimes." Trial Court Opinion, 9/16/15, at 7-9.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/21/2016</u>