J-A26022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JULIE CIARLANTE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SHAWN CLARK | : | No. 3056 EDA 2019 |

Appeal from the Judgment Entered  November 25, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  3313 May Term 2018

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                          Filed: January 21, 2021

Julie Ciarlante appeals from the judgment,[1] entered in the Court of

Common Pleas of Philadelphia County, following a jury verdict in favor of

Appellee Shawn Clark.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Ciarlante purports to appeal from the order denying her post-trial motions. "[T]he proper, procedural course to pursue in perfecting an appeal from [a] jury verdict is to reduce the verdict to judgment and take an appeal therefrom and not from an order denying post-trial motions." **Crosby v. Department of Transportation**, 548 A.2d 281, 283 (Pa. Super. 1988).  Technically, an "[a]ppeal lies from the judgment entered and not the denial of post-trial motions," **id.**, and a "verdict [does] not become final for purposes of appeal until properly reduced to and entered as a formal judgment under Pa.R.C.P. 227.4."  **Crystal Lake Camps v. Alford**, 923 A.2d 482, 488 (Pa. Super. 2007).  By order dated November 18, 2019, this Court directed Ciarlante to praecipe the trial court Prothonotary to enter judgment on the verdict of the trial court.   She did so on November 25, 2019.  Accordingly, the notice of appeal previously filed in this case will be treated as filed after the entry of judgment, and we have amended the caption accordingly.  **See** Pa.R.A.P. 905(a).

The trial court summarized the facts of the case as follows:

On May 31, 2018, Plaintiff [] Ciarlante filed a [c]omplaint against Defendant [] Clark, asserting claims of [n]egligence and [p]roperty [d]amage stemming from an automobile accident on April 26, 2017[,] on Comly Road near the intersection with Decatur Road in the City of Philadelphia. On October 15, 2018, [Clark] filed an [a]nswer with [n]ew [m]atter, asserting[,] among other defenses, [c]omparative [n]egligence and [l]imited [t]ort. On October 19, 2018, [Ciarlante] filed a [r]eply to [n]ew [m]atter. On May 2, 2019, the matter was assigned to the June 2019 trial pool.

\* \* \*

On June 12, 2019, prior to the start of trial, this [c]ourt addressed the parties' motions[ *in limine*. Clark] sought to preclude the testimony of [Ciarlante], Erin Ciarlante, and Annette Jones concerning the speed of [Clark's] vehicle and further sought to preclude any testimony of Annette Jones that [Clark] intentionally caused the accident. These four motions were reserved for trial for [Ciarlante] to set a factual predicate for the proffered testimony. [Clark] additionally sought to preclude any testimony or evidence regarding [his] prosthetic eye, which was granted in part via this [c]ourt's ruling that such testimony would not be presented during openings and that [Ciarlante] must present an offer of proof that the evidence is more probative than prejudicial. [Ciarlante]'s motion sought to have the [c]ourt deem [Clark] as [having] full tort [insurance coverage] based upon [Ciarlante's] injury, which this [c]ourt denied without prejudice to argue the facts after the evidence was presented at trial.

Trial commenced on June 12, 2019[,] and both [Ciarlante] and [Clark,] respectively[,] rested their cases on June 13, 2019. Following the close of all evidence, this [c]ourt provided the jury with a preliminary charge on assessing the evidence. Counsel subsequently made their closing remarks, after which this [c]ourt further instructed the jury on the law applicable to [Ciarlante]'s claim of negligence. On June 13, 2019[,] the jury returned a verdict in favor of [Clark].

On June 24, 2019, [Ciarlante] filed a timely [m]otion for [p]ost-[t]rial [r]elief seeking the grant of a new trial. On July 8, 2019,

[Clark] filed his opposition to the [m]otion and, on October 18, 2019, this [c]ourt denied the motion.

On October 25, 2019, [Ciarlante timely] filed a [n]otice of [a]ppeal to the Superior Court[,] and on October 28, 2019, [the court served Ciarlante with] an [o]rder directing her to file a concise statement of the [errors] complained of on appeal pursuant to Pa.R.A.P 1925(b). On November 14, 2019, [Ciarlante] filed a timely [Rule 1925(b)] statement [] asserting [nine instances of reversible error.]

Trial Court Opinion, 2/10/20, at 1-3 (internal citations omitted).

On May 21, 2020, Ciarlante timely filed her appellate brief following our grant of two extensions in March and April. On appeal, Ciarlante presents the following issues, which we have reordered for ease of disposition:

1. The court abused its discretion in finding Annette Jones available. Moreover, the court abused its discretion in denying [Ciarlante] [a] reasonable opportunity to introduce [Jones' testimony] by alternative means.

2. The court abused its discretion and committed an error of law in denying [Ciarlante] [the] opportunity to introduce evidence and/or impeach [Clark] over having a missing eye.

3. The court abused its discretion when refusing to order a mistrial after [Clark] introduced information of insurance.

Appellant's Brief, at i (unnecessary capitalization omitted).

Ciarlante first claims that the court abused its discretion when it determined that witness Annette Jones was not unavailable under Pa.R.E. 804. Specifically, Ciarlante claims the court should have admitted Jones' discovery deposition at trial. *See* Appellant's Brief, at 18-20. Additionally, Ciarlante claims the court abused its discretion when it failed to afford her a reasonable opportunity to introduce Jones' testimony by alternative means. *Id.* at 20-21.

The trial court summarized the basis for its ruling as follows:

This [c]ourt and counsel spoke with [] Jones via telephone and [] Jones explained her ongoing health issues, but when faced with the inquiry about more flexible options, [] Jones stated that it "feels like I'm being pressured into doing something" and that "—have nothing to do with it. [*sic*] I even asked Miss Ciarlante's attorney to please just cease and desist because they're sending people to my house nonstop." Moreover, this [c]ourt noted that the subpoena that [] Jones received was dated June 11, 2019, which was only one day before trial commenced. This [c]ourt simply cannot find that serving a subpoena the day before trial complies with the mandates of [Pennsylvania Rule of Civil Procedure 234.1[2]] or the applicable case law requiring reasonable notice. As such, this [c]ourt determined that [Ciarlante] did not satisfy the requisite elements of Pa.R.E. 804(a) for a finding of [Jones'] unavailability.

Trial Court Opinion, 2/10/20, at 6-7 (footnote omitted).

Our review of the record reveals that on June 12, 2019, Ciarlante's counsel informed the court during a pre-trial hearing of the possibility that Jones may not attend trial to testify that day, despite her being served with a subpoena, and that counsel intended to read Jones' discovery deposition transcript into the record if Jones failed to appear. *See* N.T. Jury Trial, 6/12/20, at 17-18. At trial, Ciarlante attempted to call Jones to the stand and read her discovery deposition into the record as substantive evidence. *See* N.T. Jury Trial, 6/13/19, at 5, 36-40. The court, before ruling on Jones' availability, *see* Pa.R.E. 104 (Preliminary Questions), initiated a telephone call to Jones using the cell phone number provided by counsel. The on-the-record

---

[2] Pennsylvania Rule of Civil Procedure 234.1 states "A subpoena shall be served reasonably in advance of the date upon which attendance is required." Pa.R.C.P. 234.1(d).

phone conversation with Jones was held outside the presence of the jury and

proceeded as follows:

> THE COURT:  Hi, Miss Jones.  This is Judge Carpenter.  How are you?
>
> MISS JONES:  Not well.
>
> THE COURT:  Well, my understanding is you've got a subpoena.  You're supposed to be in court.
>
> MISS JONES:  I'm not feeling well.
>
> THE COURT:  Well—
>
> MISS JONES:  I tried to explain that to the guys who went—threw the subpoena at me the other day.
>
> THE COURT:  Yeah.  What's wrong?
>
> MISS JONES:  I have—(inaudible.)
>
> THE COURT:  What's that?
>
> *   *   *
>
> MISS JONES:  It's an autoimmune disorder.
>
> THE COURT: Okay.  The witness has said she has an autoimmune issue and she's not feeling well.  Well, what if I told everybody that they needed to take your videotaped trial testimony so you didn't have to come, **would you be able to make accommodations so that they could do that, so you didn't have to come to court?**
>
> MISS JONES:  **Where would I have to go?**
>
> THE COURT:  Well, where do you live?  I could tell them they have to make an accommodation for you up near you.  Are you up in the northeast?
>
> MISS JONES:  No, I am not.
>
> THE COURT:  In Feasterville?
>
> MISS JONES:  Yes.
>
> THE COURT:  Is that Bucks County?

MISS JONES:  Yes.

THE COURT:  Well, I mean, I'm sure they must have an office of a court reporter that's in your area and they could do it, like, **within five miles of your house.**

MISS JONES:  **I don't know.  I don't know anything about that.  All I know is that right now I am in a lot of pain and I'm not feeling well.  And in order to concentrate I can't give you my best effort and my testimony if I'm not feeling well and I can't concentrate.**

THE COURT:  I know, but I think you gave testimony before and I think it would just be to make sure—you  know, I mean, if you agreed with what you said in your testimony before or whatever.  But it's so the jury could see who you are and see what you look like, you know, and just know that you are a real person and that you could tell them that yourself, to the jury.  **You know, you'd be on video but you would be talking to the jury, and that you could just say everything that we're saying there** [*sic*], is that, you know, you're not feeling well.  I would limit how long it would be.  I mean, **I wouldn't make you stay for more than one hour.**  []

MISS JONES:  **I can't be in Center City.**

THE COURT:  I'm not asking you to commute to Center City.  The lawyers could provide for transportation for you and there would be a court reporter within five miles of your house.  They could get transportation for you from your house to the court reporter's office.  It would be one hour and then **they would arrange transportation to come from your house—back from the court reporter back to your house, and it could be any time today or tomorrow.**

MISS JONES:  **Today's not an option.**

THE COURT:  Okay.  How about tomorrow morning?

MISS JONES:  **I can't sit for that right now.**  I'm not feeling well.

*     *     *

MISS JONES:  **And I'm not trying to argue with you, but it feels like I'm being pressured into doing something.**

THE COURT: Well, you are, because I'm a judge and you have a subpoena to come to court because you're a witness. And I'm trying to—and you're right that there is a subpoena, and I'm trying to see—**I'm trying to see if there's accommodations that can be made so that your testimony can be taken so you don't have to come to court.**

MISS JONES: I'm sorry. (Inaudible.)—**have nothing to do with it. I even asked Miss Ciarlante's attorney to please just cease and desist because they're sending people to my house nonstop** and—

\* \* \*

MISS JONES: My left eye is killing me. There is—I'm on treatment. There is nothing more the doctors can do for me right now. I go to my specialist in New York, but **it's very hard to get an appointment in August.** I just saw my protologist [sic] a couple weeks ago. **The condition fluctuates and changes.** There is nothing I can do. My primary doctors cannot even treat this condition.

MR. MUSITIEF: Understood.

MISS JONES: They frighten you with the medical professional sign in their emergency room where they can't do anything for me. Urgent care on the street corner doesn't know anything about this disease, it's so rare. I basically have to sit and suffer through. This is my life. I'm not lying to you.

\* \* \*

[Whereupon, the court terminated the call to Jones and the following conversation was held on-the-record, and outside the presence of the jury.]

THE COURT: Well, I'm just going to let you know that under the law—stop. Under the law she's not unavailable.

MR. WALL: I understand that but—

THE COURT: But I'm not dragging a woman who's ill down to court when you guys can just go up to her and, in an hour, take a trial deposition and present her testimony **in the alternative means to dragging her down here. There are ways we can accommodate her. But she's not unavailable.** We make people, you know, do things when they're, you know, near death,

show up.  We just have to accommodate their illnesses, which I would absolutely do with her.  I'm not telling you that—**I don't see any reason why you guys can't just stop the trial right now, make an accommodation to some telephone, video, whatever it is, whatever the accommodation would be, you can get on a phone and take her testimony over the phone and have the court reporter record it and play it back. Whatever the different issues are, there can be accommodations that can be made** so that whatever it is that you wish to have her, you know, you can—**but you can make a decision about it.**  But she's not unavailable under the law.

MR. MUSITIEF:  Well, I disagree with you.  The woman—

THE COURT:  Well, you can disagree with it but—

MR. MUSITIEF:  Let me finish.

THE COURT:  Counsel, no.  Stop.  Unavailable under the law is—there's plenty of case law for it.  Unavailable really is unavailable, you can't make an accommodation to get their trial testimony.  I am not saying that if you ask—listen, don't—you know, **don't make her come all the way down here to court, I would grant that.**  I'm not making her come all the way down here to court when there's no reason to.  But she's not unavailable for purposes of Rule 804 of the Rules of Hearsay.  She's just not under the law.  **Does that mean we shouldn't make accommodations for her?  Absolutely.  And there are accommodations that can be made.**  There's agreements that you guys can make.  There are ways that you can figure out, the two of you, what do you want to do so that you can—**and you can also just agree that you're going to read what you've got on her, knowing that if you go and take her deposition this afternoon, that she may just say the same thing, or I don't remember.  And if she tells you I don't remember, you're just going to be reading the deposition transcript.**  So—

\* \* \*

THE COURT:  I've made a ruling that under the law she is not unavailable.  Okay.  The ruling has been made, **but does that mean that I am going to tell you that she's got to be physically present in this room?  No.  And accommodations shall be made to get her testimony done. . . .**  [Y]ou can get on the phone, find a court reporter, pay the money to get a

- 8 -

medical transport to get her from her house to the court reporter or an Uber or pay her husband or whatever accommodations that can be made, take her deposition by video, trial testimony by video and get her testimony. And you can show her her deposition. She can say, I don't have anything else to add. Fine. But she is on video so that the jury may evaluate her credibility. **So, will I allow you alternate means to get her testimony? Yes.** But that's not unavailable such that her discovery deposition gets to be read to the jury.

\* \* \*

MR. WALL: [] We can't do a telephone dep[osition] because the jury has a right, my client has a right to have [Jones] appear and present in front of the jury so they can assess her credibility; not some voice on the phone. []

THE COURT: Well, the rules in Pennsylvania don't allow telephone. **If all of you agree, then I would allow it.**

MR. WALL: I will not agree.

\* \* \*

THE COURT: The rules are very clear. When someone's under subpoena, they are under subpoena. The sanction for violating a subpoena is, unfortunately, to go and grab them and drag them down here. **Nobody asked me to do that.** I don't like doing that to witnesses, but that is court subpoenas. Violation of a court subpoena is contempt of court. I can't just say, oh, you just don't feel like coming in. It doesn't work that way.

\* \* \*

THE COURT: [] **In a civil case we have these alternative means, and I am just telling you that I am willing to take a break from trial, over the objection of counsel**. But it's not for me to get involved as that alternative means. And if you can't procure her testimony one of those alternative means, then you've got to do what you do. []

\* \* \*

THE COURT: That's not—counsel, I don't like to tell you this, but **what you're meant to do is get an order from me that she didn't comply with the subpoena and you didn't do it.**

\*     \*     \*

THE COURT: Fine. You know what, **I'm not going to give you any more opportunity. We're just going to go forward now. . . .** You know, **we're just going to do closing argument.**

\*     \*     \*

MR. MUSITIEF: Your Honor, I'm moving for a mistrial.

THE COURT: Well, no.

N.T. Jury Trial, 6/13/19, at 40-59, 71-94 (emphasis added).

Ciarlante argues that Jones was unavailable due to her "sickness and infirmity" and, therefore, the trial court should have admitted Jones' discovery deposition as substantive evidence, under Pennsylvania Rule of Civil Procedure 4020. Appellant's Brief, at 18-20. Ciarlante claims that she is entitled to a new trial as a result of this alleged error. Additionally, Ciarlante argues that the court erred when it "denied [her] any reasonable opportunity for obtaining [Jones'] testimony, by alternate means, and then entirely forwent the testimony." **Id.** at 20-21. Moreover, Ciarlante asserts that "the sequence of events shows an abuse of discretion motivated by partiality, prejudice, bias, or ill will and thus [is] grounds for a new trial." **Id.** at 21. Finally, Ciarlante claims the court erred when it found that she only served Jones with a subpoena on the day before trial, and that even if this were the only subpoena served on Jones, such notice was reasonable under the circumstances because the case was assigned to the June trial pool with less than 24-hours' notice to the parties for jury selection. **See** Appellant's Brief, at 5-6, 20; **see also** Trial Court Opinion, 2/10/20, at 6-7. We disagree that Ciarlante is entitled to a new trial.

Ciarlante's first two issues on appeal challenge the court's evidentiary rulings. Our standard of review is well-settled:

The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. McClure*, 144 A.3d 970, 975 (Pa. Super. 2016) (quoting *Commonwealth v. Poplawski*, 130 A.3d 697, 716 (Pa. 2015)) (internal citations and quotation marks omitted).

With regard to Ciarlante's first issue on appeal, we note that hearsay evidence is generally inadmissible. *See Commonwealth v. Smith*, 681 A.2d 1288, 1290 (Pa. 1996) ("[A] proponent of hearsay evidence must point to a reliable hearsay exception before such testimony will be admitted."). Hearsay is defined as "a statement that the declarant does not make while testifying at the current trial or hearing; and [that] a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). One exception to the general rule against the admission of hearsay evidence is the use of an unavailable witness's deposition. *See* Pa.R.C.P 4020(a)(3)(c); *see also Beaumont v. ETL Servs.*, 761 A.2d 166, 172 (Pa. Super. 2000) ("Once a trial court is satisfied that a witness is unavailable, their deposition testimony may be admitted as substantive evidence.").

Pennsylvania Rule of Evidence 804 (Exceptions to the Rule Against Hearsay—When the Declarant is Unavailable as a Witness) governs how trial courts determine a witness's availability. Rule 804 states in relevant part:

(a)  Criteria for Being Unavailable. A declarant is considered to be unavailable as a witness if the declarant:

*   *   *

(4)  cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or

(5)  is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure . . . the declarant's attendance . . . or testimony[.]

Pa.R.E. 804(a).

Regarding subsection (a)(5), we have previously said that "a declarant will not be deemed to be unavailable upon mere assertion of such by the proponent; rather, the proponent must exhibit the efforts taken to procure the declarant's attendance." **CONRAIL v. Del. River Port. Auth.**, 880 A.2d 628, 630 (Pa. Super. 2005).

Here, we find that the court did not abuse its discretion under Rule 804(a)(4) in finding that Jones was not unavailable due to infirmity or physical illness. **See McClure**, **supra**; Pa.R.E. 804(a)(4). In response to questions about why Jones was not able to attend trial, several of her answers had **no connection whatsoever** to how her autoimmune disease prevented her from attending trial **on that day** or as to why her trial testimony could not be

procured **prior to trial**. *See* N.T. Jury Trial, 6/13/19, at 40-49 ("I can't be in Center City."; "Today's not an option."; "I can't sit for that right now."; "And I'm not trying to argue with you, but it feels like I'm being pressured into doing something."; "[I]t's very hard to get an appointment in August. I just saw my protologist [sic] a couple weeks ago. The condition fluctuates and changes."). The trial court's discretionary determination was adequately supported by the record under these circumstances.[3] *See Rettger v. UPMC Shadyside*, 991 A.2d 915, 924 (Pa. Super. 2010) ("Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.").

Additionally, we note that Ciarlante cites no case for the proposition that **the court** should have afforded her a reasonable opportunity to obtain Jones' testimony after the trial had already begun because there is none. Rule 804(a)(5) requires the statement's **proponent**—not the court—to use reasonable means to procure the declarant's attendance or testimony. *See* Pa.R.E. 804(a)(5) ("A declarant is considered to be unavailable as a witness if the declarant[] is absent from the trial or hearing **and the statement's proponent** has not been able, by process or other reasonable means, to procure . . . the declarant's attendance . . . or testimony[.]") (emphasis

_____

[3] We decline to accept Ciarlante's invitation to reach the question of whether the court should have found the evidence sufficient to support a finding of Jones' unavailability. *See Rettger*, *supra* ("A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion.") (citation omitted).

added). *See also Commonwealth v. Brown*, 52 A.3d 1139, 1176 (Pa. 2017) ("[I]n interpreting the meaning of the Pennsylvania Rules of Evidence, [our Supreme Court] ascribes to the words of those rules their plain and ordinary meaning[.]").

Here, Ciarlante's efforts taken to procure Jones' attendance at trial or to preserve her testimony prior to trial include: service of two subpoenas, one on May 14, 2019, and the other on June 11, 2019, which was one day prior to the start of trial. Although Ciarlante has provided evidence that she served Jones with a subpoena on May 14, 2019, the trial court only acknowledged service of the June 11, 2019 subpoena in its Rule 1925 opinion. Our review of the record demonstrates that Ciarlante's affidavit of service for the May 14, 2019 subpoena states that it required Jones to attend trial on June 3, 2019.[4] *See* Affidavit of Service, 5/14/19. Nevertheless, the record reveals that the parties were not called to trial until June 10, 2019. Although the court did not acknowledge the affidavit of service concerning the May 14, 2019 subpoena, we decline to find an abuse of discretion since that subpoena issued by Clark ordered Jones to attend trial on the wrong day; such notice is not reasonable. *See McClure*, *supra*; *see also Commonwealth v. Walsh*, 36 A.3d 613, 620 (Pa. Super. 2012) ("Pennsylvania Rule of Civil Procedure 234.1 does not

---

[4] The June trial pool, to which this case was assigned, listed June 3, 2019 as the start date. *See* N.T. Jury Trial, 6/13/19, at 88. Nevertheless, as the court noted, it was counsel's responsibility to ensure Jones' attendance at trial, which was held June 11 and 12, or to secure her testimony by other means. *Id.* at 90; *see also* Pa.R.E. 804(a)(5).

explicitly contain a notice requirement. However, we do note that in general the recipient of a subpoena must be given reasonable notice in order to comply with the request.").

Additionally, we decline to find an abuse of discretion with regard to the June 11, 2019 subpoena—one day's notice to Jones was unreasonable under the rule. **McClure**; **Walsh**; **see also** Trial Court Opinion, 2/10/20, at 6-7. Ciarlante has failed to exhibit what efforts she took to procure Jones' attendance by process or other reasonable means.[5] **See CONRAIL**, **supra**. Consequently, Jones cannot be considered unavailable pursuant to Pa.R.E. 804(a)(5).

Finally, we note that, contrary to Ciarlante's claims, the court afforded her numerous reasonable opportunities to procure Jones' testimony. **See** N.T.

---

[5] Insofar as Ciarlante argues that the notice in the June 11, 2019 subpoena was reasonable, we find that argument meritless. In the trial court docket, an entry dated August 28, 2018, provided clear instructions on how the parties should address scheduling conflicts and how to seek a continuance or date certain if appropriate under the circumstances. The record reveals that Ciarlante did not use these reasonable alternative means that were available to her, or any others, to procure Jones' testimony prior to trial. **See CONRAIL**, **supra** at 630 ("[T]he proponent must exhibit the efforts taken to procure the declarant's attendance[.]"). Indeed, counsel indicated at trial that he enjoyed mixed success in reaching out to Jones prior to trial. **See** N.T. Jury Trial, 6/13/19, at 38 ("And we did subpoena [Jones] on May 19th. I am going to tell you that my office and [I] made several efforts to call [Jones]. She hasn't responded to any calls but I will try again."); **id.** at 53 ("And [Jones] has cooperated a number of times. She responded to a subpoena, came and testified at [a] deposition at my office before."). Here, we agree with the trial court and find that Jones' limited scheduling availability does not make her unavailable for trial under Rule 804. **See CONRAIL**, **supra** at 630 ("[A] declarant will not be deemed to be unavailable upon mere assertion of such[.]").

Jury Trial, 6/13/19, at 40-59, 71, 73, 76, 79, 80-81, 82. Consequently, Ciarlante's first claim on appeal fails.

Ciarlante next claims that the court should have permitted her to introduce evidence of Clark's prosthetic left eye. Appellant's Brief, at 23-25. Ciarlante claims that evidence showing she was to Clark's left when driving, combined with evidence that Clark accelerated into the intersection prior to the accident, makes the evidence of Clark having only a functioning right eye "extremely probative of liability." *Id.* at 23.

The trial court found this issue to be meritless because Ciarlante "deliberately elicited testimony from [Clark] regarding his left eye as of re-cross examination . . . in contravention of [c]ourt order, and suffered no prejudice at trial." Trial Court Opinion, 2/10/20, at 9-12. We agree.

Our review of the record reveals that the trial court ordered at the motions *in limine* hearing that no reference to Clark's prosthetic left eye would be presented during opening statements and that Ciarlante must present an offer of proof that the evidence was more probative than prejudicial. *See* N.T. Jury Trial, 6/12/19, at 16-17. At the start of trial, Ciarlante called Clark to testify on cross-examination and elicited testimony requiring the court to pause the trial and conduct a hearing pursuant to Pa.R.E. 104 to determine whether the evidence of Clark's prosthetic left eye was relevant, and whether it was more prejudicial than probative. *Id.* at 66-135. After conducting the hearing, the court ruled on the admissibility of the evidence as follows:

THE COURT: Well, **I have not heard that the accident happened to his left.** You have not established that he has an issue with where it's coming from. And even if it's relevant, the real argument is **it's more prejudicial than it is probative**. So, that is the real issue as to what extent can you bring in a person's disability in court without first [] establishing its probative value outweighs its prejudicial value. Disabilities are all the same, whether you would—and whether somebody has a blindness, he's got corrective lenses, he was wearing them. He has a driver's license issued by the Commonwealth of Pennsylvania, and there has [] yet [to] be[] any testimony that the car was coming from an area where [Clark] couldn't see. So, I said **as of yet, your client has not yet testified and you chose to call [Clark] as of cross. So, right now it is not being admitted.** Can you establish it? Maybe you can, but you've established that he wears glasses, where it's coming from and that he saw headlights. That's it.

N.T. Jury Trial, 6/12/19, at 91-92 (emphasis added).

After the court's ruling, on re-cross examination, Ciarlante elicited the following testimony from Clark:

[Mr. Musitief:] Okay. And, in fact, when you went through the intersection eastbound, when you went through the intersection you were the only car that went through the intersection, through that intersection from the direction you were traveling, correct?

[Clark:] I do not know if that's correct, no.

Q. You didn't see any other vehicles go through that intersection from the—

A. I saw other vehicles turning, and I don't know if anybody was next to me or—

Q. Yeah.

A. I was paying attention to where I was going.

Q. You saw other—

A. I do not know.

Q. You saw the vehicles in the right-hand lane?

- 17 -

A. As I was passing them, yes.

Q. They weren't going through the intersection, were they[?]

A. They were turning into it.

Q. Okay. Did anybody in the left-hand lane go through the intersection at the time that the light turned yellow in the direction you were traveling other than yourself?

A. I do not know.

Q. Okay, and with respect to the intersection—I'm going to show you Trial Exhibit 4. You understood that because there's a median on Decatur Road that traffic westbound on Comly would have to come up halfway near that median and stop there and yield to oncoming traffic, right?

A. That's correct.

Q. And, in fact, you never saw Miss Ciarlante blocking any traffic, correct, at any point?

A. Yes, I did.

Q. You saw her blocking traffic?

A. The moment she pulled right in front of me. Yes, sir.

Q. At the moment, the second that the collision happened?

A. Yes, sir.

Q. Okay. That she was blocking traffic?

A. She blocked me.

Q. She blocked you. Let me ask you this. If you saw her lights, would you—the lights of her car, the headlights, 60, 70 feet on the other side of Comly, why do you think you didn't see her vehicle?

A. Because there were bright lights. It was dark out. All I saw was the headlights.

**Q. Do you have any vision problems with your left eye?**

A. I don't have any vision problems with my left eye at all. I have a prosthetic left eye. I have no vision.

MR. WALL: Objection.

MR. MUSITIEF: Okay. All right. Those are all the questions I have. Thank you.

THE COURT: Counsel.—

*Id.* at 126-28 (emphasis added).

"All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. One noted exception is found in Rule 403, which states "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Here, we discern no abuse of discretion in the trial court's determination that Ciarlante's proposed evidence was more prejudicial than probative. *See McClure*, *supra*; *see also* Pa.R.E. 403. Indeed, at the time of the court's Rule 104 hearing and Ciarlante's questioning of Clark on re-cross examination, Ciarlante had not yet established the factual predicate necessary to show that the accident occurred to Clark's left, or outside of his field of vision in that direction. *See* N.T. Jury Trial, 6/12/19, at 91-128. Therefore, the evidence was only minimally relevant at that point, *see* Pa.R.E. 401, and certainly posed a high danger of unfair prejudice to Clark if misused by the jury. *See*

Pa.R.E. 403. Moreover, the court correctly noted that Ciarlante suffered no prejudice—Clark answered questions regarding his prosthetic eye on re-direct examination following Ciarlante's initial questioning on that topic.[6] ***See id.*** at 128-30. Therefore, Ciarlante's second issue on appeal is meritless.

---

[6] Clark answered the relevant questions as follows:

> BY MR. WALL:
>
> Q. **When did you lose your eye?**
>
> A. **When I was 15.**
>
> Q. Do you have a driver's license?
>
> A. Yes, I got a driver's license when I was 18, 19.
>
> Q. And as a result of losing your eye, did the Commonwealth let you get a driver's license?
>
> A. Certainly. I have a forklift operator's license. I have heavy machinery operator's license. . . . I use those for work all the time.
>
> Q. How old are you now?
>
> A. Fifty.
>
> Q. Okay. So, you lost your eye 35 years ago, but you've had a driver's license in this state [for years?]
>
> A. I drive a motorcycle. I have a forklift operator's license at work. I drive heavy cranes. I drive everything at work. I've taught my four children how to drive. I mean that I have no problems. I hunt, I fish, ski. So, it's no problem to me at all.
>
> Q. **Your disability is no problem for you?**
>
> A. **It's not a disability.**
>
> Q. You don't have any inability to see traffic at night?

Finally, Ciarlante argues that, pursuant to **Dolan v. Carrier Corp.**, 623 A.2d 850, 853 (Pa. Super. 1993), which held that evidence of insurance was irrelevant and prejudicial and justified the grant of a mistrial, she is entitled to a new trial because Clark introduced evidence of insurance twice. Ciarlante additionally asks this Court to extend the holding of our Supreme Court's decision in **Price v. Guy**, 735 A.2d 668, 672 (Pa. 1999). There, the Supreme Court found reversible error where the trial court informed the jury that the plaintiffs had elected the limited tort insurance option and that such election resulted in their paying lower premiums, to include situations where the trial attorneys—and not just the court—"impermissibly introduce[] the concept of limited tort" to the jury. Appellant's Brief, at 23. We disagree that Ciarlante is entitled to a new trial.

Our Supreme Court has previously set forth the standard of review for a trial court's ruling on a motion for a new trial:

---

A. Not in front of me, no.

Q. Okay. And you had your glasses on?

**A. I always wear my glasses.**

N.T. Jury Trial, 6/12/19, at 128-30 (emphasis added).

Moreover, we decline to find prejudice insofar as Ciarlante argues she was prevented from admitting evidence of Clark's prosthetic eye in her case-in-chief; the court's ruling *in limine* was adequately supported by the record and Ciarlante had, at the time of her questioning of Clark, failed to establish the necessary factual predicate to introduce the evidence. **See McClure**, **supra**; **see also** Pa.R.E. 403.

- 21 -

It is a fundamental and longstanding precept that the decision to order a new trial is one that lies within the discretion of the trial court. This means that the trial court has considerable latitude within which to act, but there are also very specific limits to what it can do.

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, and discretionary power can only exist within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgement, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

One way of summing up all the qualities described in this definition of a valid exercise of discretionary power is to say that the decision had merit. Conversely, if the reason for performing a discretionary act had no merit, then the trial court abused its discretion. Thus, when viewed in terms of the degree of scrutiny that should be applied, an inquiry into an abuse of discretion is operationally equivalent as one into the merit of the trial court's decision.

*Coker v. S. M. Flickinger Co.*, 625 A.2d 1181, 1184-85 (Pa. 1993) (internal citations omitted).

"The general rule in Pennsylvania is that evidence of insurance is irrelevant and prejudicial and justifies grant of a mistrial." *Paxton Nat'l Ins. Co. v. Brickajlik*, 552 A.2d 531, 533 (Pa. 1987). *See also* Pa.R.E. 411 ("Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or

control."). However, "the mere mention of the word insurance by a witness during trial does not necessitate a new trial. There must be some indication that the defendant was prejudiced." ***Phillips v. Schoenberger***, 534 A.2d 1075, 1078 (Pa. Super. 1987) (citing ***Pushnik v. Winky's Drive In Restaurants***, 363 A.2d 1291, 1297 (Pa. Super. 1976) (en banc)) (brackets omitted). When reviewing the trial court's determination, we consider the circumstances under which the statement regarding insurance was made and the precautions taken by the court to prevent the statement's prejudicial effect. ***Clark v. Hoerner***, 525 A.2d 377, 381 (Pa. Super. 1987). Moreover, the "trial judge is in the best position to observe the atmosphere in which a trial is being conducted and to determine whether a statement in the heat of trial by counsel or a witness has had a prejudicial effect on the jury." ***Id.***

Here, Ciarlante failed to timely object on the record with regard to her first complained-of instance where insurance was mentioned. ***See*** N.T. Jury Trial, 6/12/19, at 68. This issue, therefore, is waived. ***See Harman ex rel. Harman v. Borah***, 756 A.2d 1116, 1124 (Pa. 2000) ("In order to preserve an issue for appellate review, an aggrieved party must make a timely and specific objection."); ***see also Allied Elec. Supply Co. v. Roberts***, 797 A.2d 362, 365 (Pa. Super. 2002) (party must make specific and timely on-the-record objection to witness's mention of insurance to preserve issue for appellate review).

In the second instance where insurance was mentioned, Ciarlante has properly preserved the issue by virtue of a timely objection after Clark's attorney directly inquired about insurance on cross-examination of Ciarlante:

[Mr. Wall:]  For purposes of the record, you have a limited tort [insurance] policy; is that right?

MR. MUSITIEF:  Objection, Your Honor.

THE COURT:  Sustained.

MR. MUSITIEF:  I'm going to ask for a sidebar.

THE COURT:  No sidebar.  I'm going to tell the jury.  I'll explain to you what the law is and what needs to be proven in order for each side to present their claims to you legally.  Okay.

MR. WALL:  All right.  Very good.

THE COURT:  All right.  Very good.

N.T. Jury Trial, 6/12/19, at 226.

The trial court found that Ciarlante did not suffer the requisite prejudice for a grant of new trial because the court:  (1) sustained Ciarlante's objection; (2) immediately explained to the jurors that it would instruct them on the law; and (3) properly instructed the jurors on the element of "serious impairment of a bodily function."[7]  **See** Trial Court Opinion, 2/10/20, at 16-17.

---

[7] The court instructed the jury regarding comparative negligence, recovery of non-economic loss damages, and the definition of "serious impairment of a body[ily] function."  **See** N.T. Jury Trial, 6/13/19, at 173-75.

- 24 -

Here, we find the trial court's determination that Ciarlante has failed to demonstrate the requisite prejudice was not an abuse of discretion.[8] **See**

---

[8] In **Price**, **supra**, our Supreme Court discussed the prejudicial concerns that arise when parties or witnesses mention insurance, which accordingly warrants grant of a new trial:

> [T]here is a risk that, in determining liability, the jury will depart from the relevant standards and definitions on which they have been charged and instead consider the fact of a party's insurance coverage, or lack thereof, as relevant on the issue of liability. Just as a jury is more likely to attach liability to a defendant covered by insurance who will not suffer financially from a plaintiff's verdict, so too is a jury less likely to award damages to a plaintiff who it views as having bargained away its right to non-economic damages in exchange for having obtained less expensive insurance coverage.
>
> The purpose of jury instructions is to keep jurors focused on resolving factual disputes based on the governing law rather than on their own ideas of how best to balance the equities. By allowing jurors to consider the extent to which parties have elected to insure themselves, trial courts afford jurors the opportunity to determine the issue of liability in accordance with their own notions of fairness, cost allocation, and risk management, rather than in accordance with the law on which they have been instructed.

**Price**, **supra** at 672.

Here, we find that the trial court mitigated any prejudice suffered by Ciarlante through the various precautionary measures employed at trial—the court properly sustained the question relating to Ciarlante's limited tort insurance policy, the court immediately thereafter informed the jury that it would give more detailed instructions on the points of law relating to that question at a later time, and the court properly instructed the jury on the law. **See Clark**, **supra** at 381 ("Whether a court has abused its discretion in refusing a motion for mistrial must be determined by the circumstances under which the statement was made and the **precautions taken to prevent its having a prejudicial effect** on the jury.") (emphasis added). The trial court was in

*Phillips*, *supra*; *see also Clark*, *supra*. Indeed, our review of the record reveals that the jury never reached questions 6, 7, and 8 on the verdict sheet—the only questions relating to insurance—due to the allocation of negligence between the parties on question five, which resulted in Ciarlante's inability to recover for her damages, thus terminating the jury's inquiry.[9] *See* Jury Verdict Sheet, 6/14/19. Therefore, the trial court did not abuse its discretion in refusing to grant a new trial. *See Coker*, *supra*. Consequently, Ciarlante's final issue on appeal fails.

Judgment affirmed.

---

the best position to determine the prejudice suffered by Ciarlante, if any, under these circumstances. *See id*.

[9] The verdict sheet questions were submitted to the jury in the following order: (1) "Was the defendant negligent?"; (2) "Was the negligence of the defendant a factual cause of any harm to [p]laintiff, Julie Ciarlante?"; (3) "Was [p]laintiff negligent?; (4) "Was [p]laintiff's negligence a factual cause of any harm to her?"; (5) "Taking the combined negligence that was a factual cause of any harm to the plaintiff as 100 percent, what percentage of that negligence do you attribute to each party?"; (6) "Do you find that [p]laintiff suffered a serious impairment of a bodily function?"; (7) "Itemize the amount of damages, if any, sustained by [p]laintiff as a result of this accident, without regard to and without reduction by the percentage that you have attributed to [p]laintiff."; and (8) [a separate itemized question for] "Disfigurement $__". *See* Jury Verdict Sheet, 6/14/19. The jurors answered "yes" to questions 1 through 4, and on question 5, attributed 49 percent of the total factual cause negligence to Clark and 51 percent to Ciarlante. *Id.*

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/21/21</u>